15  335
62  15

## Woodruff and others *against* Noyes and others.

If the vendor of goods attach them as the property of the vendee, while they are in the course of transportation, such attachment will destroy the right of the vendor to stop them *in transitu;* though the attachment of such goods, by a third person, would not have that effect.

Where *C,* by letter, ordered goods of *A,* directing them to be shipped to the care of *B,* who resided at *N.,* where they were to be landed; *A* shipped the goods, by a vessel bound to *N.,* directed to *C,* but not to the care of *B;* they arrived at *N.,* and were taken possession of by *P,* without the knowledge of *B;* it was held, 1. that as the goods were not directed agreeably to the order of *C,* he was not bound to receive them, and that therefore, unless he waived the performance of the condition, the title to the property would not vest in *C,* but would remain unchanged in *A;* 2. that this condition might be waived, and the goods accepted at *N.,* by *C,* either personally, or by his authorized agent; 3. that a person authorized by *C* to act merely as a truckman or common carrier, to transport these goods from *N.* to *C,* without any authority from *C,* as a general agent, to take charge of all the goods coming to him for *C,* was not authorized to waive such condition, and thereby vest the title to the property in *C.*

THIS was an action of trover for a quantity of plow castings.

The cause was tried at *Hartford, January* term, 1843, before *Williams,* Ch. J.

In *October,* 1839, *Justus Chollar,* who resides at *Brooklyn,* in this state, called upon the plaintiffs, who were manufacturers of iron castings in *Hartford,* to know the terms upon which he could procure a quantity of plow castings, to be made at their foundery, and to be furnished on a credit; he, upon his return to *Brooklyn,* to inform the plaintiffs further on the subject. On the 4th of *November,* 1839, *Chollar* wrote to the plaintiffs, informing them what quantity of castings he would take upon the terms conversed about when he was in *Hartford,* on a credit of six months from the 1st of *April* then next; in which letter, he added "Please ship to the care of *F. W. Bushnell.*" This letter was duly received by the plaintiffs; but no answer was returned. On the 27th of *November,* 1839, the plaintiffs shipped the castings so ordered, by a vessel bound to *Norwich,* then at *Hartford;* this being the usual mode of transportation. They were directed to *Justus Chollar, Brooklyn;* but not to the care of *F. W. Bushnell, Norwich;* and bills of lading were given accordingly. The castings arrived at *Norwich,* on the 28th of *November,* and were immediately taken, by one *Perry,* without the knowledge of *Bushnell,* and carried to the railroad depot, to be transported in the usual way of conveying goods from *Norwich* to *Brooklyn,* and were duly entered for that purpose. While the castings were lying there, *Chollar* became insolvent; and, on the 4th of *December,* 1839, they were attached, by the defendant *Noyes,* a constable of the town of *Norwich,* by a writ in favour of *Miner,* one of the defendants; on the 7th of the same month, they were again attached by *Noyes,* on a suit in favour of *Hall,* another of the defendants; and on the 10th, they were again attached, at the suit of the plaintiffs in this action; in each case, as the property of *Chollar,* and by directions of the several plaintiffs in the suits. Upon the first attachment, *Noyes* took the castings into his possession, and continued to hold them until the 1st of *April,* 1840, when he sold them upon executions obtained in the two first-mentioned suits of *Miner* and *Hall.*

The plaintiff's writ was duly returned to the county court held in the county of *Hartford,* on the 4th *Tuesday* of *March,*

1840. No appearance was entered in it ; but no notice of that fact was given to the defendants.

The plaintiffs claimed to have proved, that on the 28th of *February,* 1840, they, by their attorney, demanded said castings of the defendant *Noyes,* claiming them as their property ; and that he refused to deliver them, without assigning any reason, but soon afterwards sold them, as above stated.

The defendants claimed to have proved, that before these castings arrived at *Norwich, Chollar* appointed *Perry* as his agent to receive and take care of his goods, which were to be sent from *Norwich* to *Brooklyn,* and cart them ; that *Chollar* told *Perry* he expected these castings ; and that they were taken by *Perry,* at *Chollar's* request.

The plaintiffs thereupon contended, that as these castings were not sent to the care of *Bushnell,* as ordered, they never became the property of *Chollar ;* that *Perry* was a mere truckman or common carrier, and no authority was ever given him, except as a carrier ; that his acts could have no effect upon the rights of *Chollar ;* and that the plaintiffs had the right to stop these castings *in transitu,* before they reached *Brooklyn.*

The defendants claimed, that the interest in these castings vested in *Chollar,* when taken by *Perry,* who, they claimed, was authorized to receive them ; that the attachments, by the creditors of *Chollar,* put an end to the right of stopping *in transitu,* as did also the delivery at *Norwich ;* and that the officer had a right to detain the goods received on the plaintiffs' attachment, and so the plaintiffs had no right of possession.

The court instructed the jury, that as the goods were not directed as ordered, *Chollar* was not bound to receive them ; but he might waive this, if he chose to accept them ; and this might be done by himself, or his agent ; that if *Perry* was his general agent to take the charge of all goods consigned to him, he might accept them ; but if employed merely as a truckman or common carrier, *Perry* would have no authority to waive any objection *Chollar* might make because they were not sent as directed. The jury were also told, that neither the arrival of the goods in *Norwich,* nor the attachments by *Miner* and *Hall,* would destroy the right of the plaintiffs to stop them *in transitu :* but that the attachment

of the plaintiffs did have this effect, although it did not take away their right of property in the goods, if they had such property: and that, if the property in the goods never vested in *Chollar,* and the defendants sold them, as claimed, after the demand made, the plaintiffs were entitled to a verdict.

The jury returned a verdict for the plaintiffs; and the defendants moved for a new trial for a misdirection.

*Ellsworth,* in support of the motion, contended, That the court did not so put the case to the jury as to give the defendants the benefit of their evidence. He insisted, particularly, 1. That *Perry* was authorized to receive " *these* castings"—*i. e.* the very castings in question. 2. That *Perry* was authorized to receive *any* castings directed to *Chollar,* coming from the plaintiffs at *Hartford* about that time, which he had ordered, irrespective of the direction " to be shipped to the care of *F. W. Bushnell.*" 3. That *Perry* was authorized to receive any articles ordered by *Chollar* from the plaintiffs, which reached *Norwich,* to be sent to *Brooklyn* directed to *Chollar.*

If either of these propositions was sustained by the evidence, the defendants were entitled to a verdict; and as the court did not so instruct the jury, a new trial should be granted·

*Hungerford* and *Cone,* contra.

STORRS, J. The plaintiffs, on the trial of this casue, claimed to recover on two grounds: 1st, That the contract between them and *Chollar,* for the sale of the castings in question, was not so far perfected that the property in them ever vested in *Chollar,* and that therefore, they remained the property of the plaintiffs; and 2dly, That, if said contract was so perfected, the plaintiffs had such a lien on the property, that they had the right, under the circumstances of the case, of stopping the goods *in transitu.* As the last claim was disposed of, by the court below, in favour of the defendants, it is necessary only to look at the case with reference to the other.

Considering the contract between the plaintiffs and *Chollar* to be, that the latter would purchase the property in question, on condition that it should be directed agreeably to the orders contained in his letter, it is clear, that, as it was not so directed,

the court below correctly instructed the jury, that *Chollar* was not bound to receive it; and that, therefore, unless he waived a performance by the plaintiffs of this condition, the title to the propety would not vest in *Chollar*, but would remain unchanged in the plaintiffs.    It was the duty of the plaintiffs, if they would bind *Chollar* to the acceptance of the property, not only to send it to him within at least a reasonable time, but also to comply with the condition on which it was to be purchased, as to the manner in which it was to be transmitted.    This being prescribed in the contract, we cannot say, that it was not essential.

The court further instructed the jury, that this condition might be waived by *Chollar*, either personally, or by his authorized agent.

The plaintiffs, for the purpose of resisting a new trial, here insist, that the charge, in this particular, was too favourable to the defendants;—that it was not competent for *Chollar* to waive this condition of the contract, by accepting the property at *Norwich*, on a general direction; and that, therefore, if such acceptance took place, it had not the effect of vesting the title to it in *Chollar*, but it still remained in the plaintiffs.

Although the plaintiffs could not compel an acceptance of the property in any other mode than that stipulated in the contract, yet if *Chollar* did not choose to insist on a strict performance of this condition, which was introduced into the agreement for his convenience or benefit alone, and in which the other party had no interest, it would seem, that there could be no sensible objection against his doing so, and by an acceptance of the property at the place where it was agreed to be sent, without the direction agreed on, thus waiving that requirement; and we are not aware of any authority or principle against it.    In the view, however, which we take of the case, it is unnecessary to consider this point.

According to the fair construction of the motion, the defendants claimed to have proved, that, before the castings arrived at *Norwich*, *Chollar* appointed *Perry* as his agent to receive and take care of his goods, which were to be sent from *Norwich* to *Brooklyn*, and cart them; and that, at the same time, he informed *Perry*, that he expected these castings at *Norwich;* that, on their arrival there, in the vessel in which they were sent by the plaintiffs, they were carried, by

*Perry,* to the rail-road depot, to be transported to *Brooklyn ;* and that, consequently, they were taken by him, at the request of *Chollar ;* and that he had a right to receive them, as his agent. The plaintiffs claimed, that *Perry* was a truckman, or common csrrier, and acted merely as such; and that no authority was given to him by *Chollar*, excepting as a carrier; that therefore, he had no authority to waive the performance of any part of the contract between *Chollar* and the plaintiffs ; and that his acts could have no effect upon the rights of the plaintiffs.

The only question of fact, therefore, controverted between the parties, as to this part of the case, was, whether *Chollar* authorized *Perry* to act merely as a truckman, or common carrier, to transport the property from the place where it was landed; or whether he conferred upon him, in addition to this, a general authority to take charge of all the goods which should be sent to him at *Norwich*, which would, of course, include the property in question. This question of fact was distinctly submitted to the jury, with instructions, that if *Perry* was *Chollar's* general agent to take charge of all the goods sent to him, he might accept them ; but if he was employed merely as a truckman, or common carrier, he would have no authority to waive any objection which *Chollar* might make because they were not sent as directed. These principles are so obviously correct, that they have not been controverted before us ; and it is not necessary to vindicate them, by reasoning or authority.

The defendants, however, complain, that the charge was not sufficiently specific ; and that they had not, on the trial, the full benefit of the law as applicable to the facts claimed to be proved by them, because the court below omitted to submit to the jury the question of fact whether *Chollar* constituted *Perry* his special agent, to take charge of the particular property in question on his behalf, if they should find that no general authority was conferred on him, and to state the law applicable to such a special authority. We think, that it is a sufficient answer to this claim, that no specific instructions were requested on this point ; and that the facts claimed to be proved, were not such as, in our opinion, required the court to direct its charge to the effect of such a special agency. The facts went to prove a general authority to *Perry* as to

all property reaching *Norwich* for *Chollar*, to be sent to *Brooklyn*, rather than a special authority as to the particular property in dispute ; and to such general authority only was it necessary to direct the attention of the jury. The mere circumstance that, when it was claimed that the authority was given, *Chollar* informed *Perry*, that he expected the castings in question, would not convert a general authority previously conferred into one of a special character. The most that can be claimed of any fact or circumstance not tending exclusively to prove a general authority, is, that it only conduced to show a special agency. It is certainly not the duty of the court to anticipate, in its charge, every possible application of the proof offered by the parties ; but only to state such principles of law as apply to the facts, as distinctly claimed to be proved. If the defendants supposed, that, failing to prove a general authority, they had succeeded in showing a special authority, they should have requested a specific direction to the jury on that point.

A new trial, therefore, should not be advised.

In this opinion the other Judges concurred.

New trial not to be granted.