60   373
85   309

A. Fox & Bro. v. P. J. Willis & Bro.

(Case No. 1540.)

1. EVIDENCE.— In a suit between parties, which involved the good faith in a matter connected with said suit by a third party, but who was not a party to the record, the declarations of such third party to another, neither party to the suit being present, are hearsay, and not admissible in evidence. Following Carleton v. Baldwin, 27 Tex., 572, and other cases cited.
2. STOPPAGE IN TRANSITU.— A charge of the court that the right of stoppage in transitu of goods sold existed in the seller, not only in the event of the insolvency of the vendee, but for other adequate cause, without explaining the meaning applied by the court to the words "other adequate cause," is error.
3. STOPPAGE IN TRANSITU.— If the seller of goods attach them in transitu for his debt his remedy of stoppage in transitu is thereby destroyed. Following Wait's Actions and Defenses, vol. 5, pp. 616, 617; Ferguson v. Herring, 49 Tex., 129, and other Texas cases.

4. SAME.—But while this is true, yet if the seller, through want of knowledge of the facts and means of knowledge attached, believed the right of stoppage *in transitu* was lost, and on learning his error immediately dismisses his attachment, he may still exercise his right of *stoppage in transitu*, if there has been no actual or constructive delivery of the goods at their place of destination.

APPEAL from Navarro. Tried below before the Hon. L. D. Bradley.

During the summer of 1881, E. M. Ewing, a merchant, then residing in Blooming Grove, Navarro county, Texas, fifteen miles west of Corsicana, was approached by an agent of appellees to sell him goods, to be delivered in the future. The goods were bought on time. In September the goods were shipped to E. M. Ewing at Corsicana, and were received by A. Fox & Bro. on the order of Ewing and taken to their store-house in Corsicana and there held. At this time Ewing was indebted to Fox & Bro. about $2,000.

Fox & Bro. were dry goods merchants, living in Corsicana. While the goods of Ewing were in the store of Fox & Bro. they negotiated with Ewing for security. No security was given, and while the goods were still in the store of A. Fox & Bro., on September 8, 1881, they sued Ewing and caused attachments to be issued and levied on the goods of Ewing in their store. Afterwards, on September 10, 1881, appellees sued Ewing on their claim for the purchase of the goods in controversy, amounting to about $2,400. The petition of appellees in their suit against Ewing alleged that the claim appellees sue upon was the purchase price of the goods in controversy, and was due for property obtained under false pretenses, and that Ewing had disposed of his property with intent to defraud his creditors. On these two grounds appellees caused attachment to issue, and by their directions the same was levied on the goods in controversy, and then in the store of A. Fox & Bro. Three days after this, on September 13, 1881, appellees filed their affidavit and claim bond to try the right of property to the goods. The suit by appellees against Ewing for the purchase money of the goods was kept on the docket until January 28, 1882, when the attachment was dismissed and supplemental petition filed and personal judgment taken against Ewing for the amounts due appellees, less the purchase price of the goods in controversy. At the July term of court, 1883, this cause came on to be tried.

The issues on which the case was tried were as follows:

1st. Appellants tender the issue that on the 8th of September, 1881, the goods in controversy were the property of Ewing, and that on that day they caused writs of attachment to be levied in

their favor, and that at that time the goods were subject to the lien of the attachment writ.

2d. That if appellees ever had any right to the title or possession of the goods they lost and waived the same by suing Ewing for the purchase price and causing attachments to be levied prior to filing claim bond for same.

To these issues appellees replied:

1st. By general denial.

2d. They admitted they sued Ewing on the contract of purchase for the goods and caused attachments to be levied on them, but alleged at that time they were not in possession of the facts showing the goods were still *in transitu;* nor that said Ewing had made false statements as to his solvency in the purchase of the goods; nor that Fox and Ewing had combined to defraud appellees, and that as soon as they discovered these facts they dismissed their attachments and filed claim bond.

Appellees tendered further issues: That the goods were purchased without paying for them and with the intention of not paying for them, and for the purpose of satisfying the debt of A. Fox & Bro. That Fox & Bro. were parties to this fraud, and that they got possession of the goods by a fraudulent transfer of the same by Ewing, and fearing the transfer would not hold they attached the goods. That by reason of these facts the right to stop the goods *in transitu* still existed. That the goods were shipped from Galveston to Blooming Grove, the place of business of Ewing, and when levied on they were in Corsicana on their way to Blooming Grove, and the transit had not ended. That the goods were sold on the representations of Ewing that he was solvent, when in truth and in fact he was insolvent. That by reason of the fraud practiced by Ewing and Fox in the purchase of the goods, no title passed to said Ewing. That Fox & Bro. were parties to the fraud of Ewing.

Appellants replied:

1st. That the goods were not in transit when levied on; that the goods had been delivered to Fox & Bro. on the order of Ewing, and the transit ended. That Fox & Bro. were the agents of Ewing for this purpose, and held the goods solely for him and subject to his order. That when the goods were levied on they were in the actual custody of Fox & Bro., and were held exclusively for Ewing. That the goods were shipped and directed to Corsicana, and not Blooming Grove.

2d. That if appellees ever had any right to the goods, they waived, lost and abandoned the same by suing Ewing for their value, and

causing attachment to be levied on the goods. They denied that there was any fraud on the part of Ewing in the purchase of the goods. They denied that Fox & Bro. were parties to any fraud by Ewing.

There was a verdict for appellees.

*John D. Lee* and *R. S. Neblett*, for appellants.

*Frost & Barry* and *Simpkins & Simpkins*, for appellees, cited: Jordan *v.* Osgood, 109 Mass. (12 Am. Rep., 733); Farley *v.* Lincoln, 51 N. H. (12 Am. Rep., 182); Oswego & Co. *v.* Landrum, 57 Iowa (42 Am. Rep., 53); Thompson *v.* Rose, 16 Conn., 71 (41 Am. Dec., 121); Knowles *v.* Lord, 4 Whart. (34 Am. Dec., 528); Benj. on Sales, 414; 15 Reporter, 181.

West, Associate Justice.— The action of the district court in permitting the witness Hutchins to detail the conversation between himself and the insolvent vendee, notwithstanding the objections interposed by the appellants at the time, was error, and was calculated, under the circumstances of this particular case, to seriously prejudice the rights of the appellants in reference to the main issues then before the jury.

The appellants were not present when it occurred, were entire strangers to it, and could no more, under the circumstances, be affected by it than they could by the remarks of any other third person made behind their backs in relation to their business affairs. Such declarations as those alleged to have been made to this witness, under such circumstances, by a third person, in the absence of the appellants, are mere hearsay, and carry no weight with them, as evidence, in a court of justice. Carleton *v.* Baldwin, 27 Tex., 572; Crippen *v.* Morss, 49 N. Y., 63; Quinlan *v.* Davis, 6 Whart., 169.

The court also committed an error in that portion of the charge in which it gave the jury to understand that the right of stoppage *in transitu* existed in the appellees not only in the event of the insolvency of the vendee, but also existed, and might be exercised by the vendors, for "*other adequate cause.*" The Constantia, 6 Rob. Adm., p. 321; Bacon's Abr., "Merchant" (L); Wood *v.* Roach, 2 Dall., 180.

Story, in his work on Contracts, speaking of this right of the seller, says: "Inasmuch as it is a privilege allowed to the seller for the express purpose of protecting him against the *insolvency* of the buyer, he cannot exercise it unless the buyer be *insolvent.*" 2 Sto.

on Con., sec. 817; Benjamin on Sales, book 5, ch. 5, p. 689 (2d ed.); Anson on Contracts, marg. p. 216; Gibson *v.* Caruthers, 8 M. & W., 339.

For the court, under the facts in evidence in this case, to inform the jury that the right of stoppage *in transitu* existed for other causes than insolvency, without at the same time specially explaining to the jury what was meant and understood by the court in that connection by the use of the words " other adequate cause," was well calculated to mislead the jury and prejudice the case of appellants.

There are also other portions of the charge of the court that presented the issues in the case in a manner somewhat unfavorable to appellants, especially some portions of the seventh and eighth paragraphs; but as for the errors above indicated the case will be reversed, it is not deemed necessary to comment on them or on certain other portions of the main charge that are not free from criticism.

The law in general governing this case and cases of a like character of stoppage *in transitu* has been already to some extent explained and applied in the case of Halff, Weiss & Co. *v.* Allyn & Co., decided at this term, which case grew out of the same transaction as the present.    The same doctrine was also practically announced by this court in the case of Chandler *v.* Fulton, 10 Tex., 2.

There is an important question presented in this case, however, as to the waiver by appellees of their right of stoppage *in transitu*, that did not arise in the case of Halff, Weiss & Co. *v.* Allyn & Co., nor in the case of Chandler *v.* Fulton.

Here the parties, after arriving on the ground, and making some inquiry, and informing themselves, as the record discloses, to a considerable extent, as to the actual condition of things, made their election, and instituted a suit for the recovery of the value of the goods sold to the insolvent debtor, and in that suit caused writs of attachment against the property of the debtor to be issued to the counties of Navarro and Ellis, and under these writs attached property of the insolvent buyer.

This action of theirs, it is strongly urged, operated as a waiver on their part of their right of stoppage *in transitu*, if, under the facts of this case, such right still had an existence.    It is contended that it was in effect a ratification of the sale by the appellees.    This attachment suit, it is also claimed, was not abandoned until the appellees had become satisfied by actual experiment that they could not, by this mode of procedure, realize but a small portion of their debt.

The general rule on this subject is that this right of the seller to

reclaim his goods may be waived. He may elect, if he sees fit to do so, to pursue some other remedy.

It is said that if the vendor attach the goods as the property of the vendee, while they are in course of transportation, the legal effect of the issue and levy of such writ of attachment will be to destroy the right to stop them *in transitu.* Wait's Actions and Defenses, vol. 5, pp. 616, 617; Bishop on Contracts, sec. 661. The following cases are also in this connection referred to: Ferguson *v.* Herring, 49 Tex., 129; Whitman *v.* Willis, 51 Tex., 426; Howeth *v.* Mills, 19 Tex., 295; Vickery *v.* Ward, 2 Tex., 214; Moore *v.* Gammel, 13 Tex., 120. See, also, Bennett and wife *v.* Gamble, 1 Tex., on pp. 136 and 137; Moseley *v.* Gainer, 10 Tex., 578.

If, in this case, it shall appear that when the attachment suit was instituted the appellees were in ignorance of the facts of the case, after having with reasonable diligence attempted to learn them; and did not then have in their possession sufficient information, or the means of obtaining such information; and ceased *immediately* to prosecute the attachment suit when they learned the facts, they might in such event still resort to their right of stoppage *in transitu,* if the goods had not already, by actual or constructive delivery, passed into the possession of the vendee. See Halff, Weiss & Co. *v.* Allyn & Co., *supra.*

We express no opinion as to whether or not the matters detailed in evidence show that the appellees learned any new facts after the attachment suit was instituted that they did not know, or could not by ordinary care and caution have learned, before that event.

If it shall hereafter turn out that they were not ignorant of the actual state of the case as it then existed, and elected, with knowledge of the facts, to institute the proceedings by attachment, and did not in fact resort to the present mode of procedure, or entirely abandon their former suit, until they discovered that it was likely that little or nothing could be gained by its further prosecution, it may be held that the right to bring the present suit when it was brought no longer existed, having been waived by their resort under the circumstances to the remedy by attachment. Such an election of their remedy, being equivalent to a ratification of the sale, would be destructive of their right, if they had any, to seize the goods *in transitu.*

The judgment is reversed and the cause remanded.

Reversed and remanded.

[Opinion delivered November 23, 1883.]