## C. H. ALLYN & Co. v. P. J. WILLIS & BRO.

(Case No. 1759)

1. CONTINUANCE—APPLICATION.—The granting or refusing of an application for a continuance not in compliance with the statute, lies in the discretion of the court, and its ruling will not be disturbed on appeal, unless it clearly appears that the court below abused its discretion. See statement of case for application for continuance held to be insufficient.

2. JURY FEE—PRACTICE.—Defendants demanded a jury and had the cause placed on the jury docket. No jury fee was deposited by or on the first day of the term, and on motion of plaintiffs the cause was stricken from the jury docket, although the jury fee was deposited before the motion was filed. The cause was called in its regular order, and plaintiffs objected to its trial on the ground that all the jury cases had not been disposed of. *Held:*

    (1) That the case should not have been stricken from the jury docket (following Gallagher v. Goldfrank, 63 Tex., 473).

    (2) Plaintiff could not be heard to complain that they were not permitted to reap a further advantage than the erroneous ruling of the court had already given them.

    (3) The trial of a case out of its regular order is no ground for reversal unless it is shown that some injury resulted therefrom.

3. SALE—FRAUD—RESCISSION.—Where a vendor has been induced to make a sale by the fraud of his vendee, the contract is *voidable* at the election of the vendor, not void *ab initio;* the vendor may sue for the price and thus affirm the contract, or sue for the goods and thus disaffirm it. (Benj. on Sales, 433.)

VOL. LXV—5

4. SAME—INCONSISTENT ACTIONS.—If the vendor has notice of the fraud which entitles him to rescind the sale, and yet institutes an action to recover the value of the goods, he is barred from afterwards bringing an action to rescind the contract of sale. The two actions are inconsistent.

5. SAME—VENDOR—ATTACHMENT—STOPPAGE IN TRANSITU.—The fact that creditors of the vendee have attached the goods, does not defeat the right of the vendor to repossess himself of the goods by stoppage in transitu. (Benj. on Sales, 836, 862; Wait's Acts. and Def., 616; Chandler v. Fulton, 10 Tex., 2.)

6. ABANDONMENT—See statement of case and opinion for facts held sufficient to constitute abandonment of an attachment as to part of goods.

7. FRAUD—RECISSION—When a sale is procured by the fraud of the vendee, the right to rescind exists, but if the sale is without fraud, the vendor has merely the right to repossess the goods, and thereby cause his lien for the purchase money to become available.

8. SAME—INCONSISTENT RIGHTS—In the former case the right to recover the price is inconsistent with the right to rescind, in the latter the right to recover the price of the thing sold, and to seize it to enforce its payment, are not inconsistent.

9. SAME—STOPPAGE IN TRANSITU—The basis of the right of stoppage *in transitu* is the insolvency of the vendee, without reference to whether the contract of sale was procured by fraud, and the right to rescind, resulting from fraud, may be waived without affecting the right resulting from insolvency. (Woodruff v. Noyes, 15 Conn.; Halff, Weis & Co. v. Allyn & Co., 60 Tex., 278, and other authorities doubted.)

10. SAME.—It is well settled by the great weight of English and American authorities that stoppage *in transitu* merely secures the possession of the goods to the vendor, so as to enable him to exercise his right as an unpaid vendor, and does not rescind the sale. (Chandler v. Fulton, 10 Tex., 2, reviewed and approved. Other authorities cited.)

11. SAME—CONSISTENT REMEDIES.—The bringing of suit and levy of attachment on the goods to secure the purchase money does not estop the vendor from asserting the right of stoppage *in transitu;* both remedies recognize the title of the vendee.

12. SEQUESTRATION—PRACTICE.—Goods subject to stoppage *in transitu*, attached by creditors of the vendee while in transit, can be sequestrated by the vendor, and possession can be obtained by filing a claim bond and taking the goods.

13. NEW EVIDENCE.—Newly discovered evidence must be of such a character as probably to change the result of the suit in order to be ground for a new trial

APPEAL from Navarro. Tried below before the Hon. L. D. Bradley.

This was a case of trial of right of property, and grew out of the failure of E. M. Ewing, in 1881.

In August, 1881, P. J. Willis & Bro., of Galveston, sold E. M. Ewing, of Blooming Grove, a town in Navarro county, fifteen miles west of Corsicana, a bill of goods, to be delivered in September, and to be paid for in one, two, three and four months.

The goods were shipped to E. M. Ewing, Blooming Grove, via Corsicana, and reached Corsicana about September 6, 1881, and were taken from the depot and stored in the storehouse of A. Fox & Bro.,

in Corsicana. On the 8th of September, Fox & Bro. sued E. M. Ewing for $2,400.00, and caused an attachment to be levied on the goods in controversy then in the store in Corsicana. On the same day, C. H. Allyn & Co. sued Ewing for $2,000 and caused an attachment to be levied on the goods in controversy. Appellees, Willis & Bro., were notified of these proceedings, and on September 10, they sent a a man to investigate the matter. On arriving at Corsicana, it was found that the goods in controversy were in Corsicana, and that they had been attached by A. Fox & Bro., by C. H. Allyn & Co. and by Sullivan & Co. W. S. Simkins was then employed by Willis & Bro. to protect their claim. Appellees then sued Ewing for the purchase price of these goods, and caused attachments to be issued to Ellis and Navarro counties simultaneously, and levied on the goods subject to the attachment of Allyn & Co. The petition and affidavit for attachment both alleged that the debt sued for was due for property obtained under false pretenses. Appellees went to Ellis county with attachment, but found other creditors ahead of them. On the 13th, three days after their petition was filed and their attachment levied, they returned to Corsicana and filed claim bond, and took the goods. The suit against Ewing remained on the docket until January 26, 1882, when appellees filed supplemental petition dismissing as to those goods, and taking judgment against Ewing as to the balance of their claim, with foreclosure of attachment on certain property levied on by virtue of their attachment.

It is admitted by appellants that the goods in controversy had not reached their ultimate destination, and if the suit by appellees against Ewing, and the levy of their attachment on the goods in controversy, did not operate a constructive delivery and a waiver of their right of stoppage *in transitu*, the goods were in transit at the time appellee's bond was filed.

On the 1st day of the July term, 1884, a jury was demanded by appellees, and the case was placed on the jury docket. When the case was reached on the jury docket, appellants applied for a continuance, which was overruled.

Appellants then filed motion to strike the case from the jury docket, which was sustained, and the case placed on the non-jury docket. The case being again called by the court, appellants declined to announce or go into the trial until the jury docket and cases prior to this one had been called and disposed of. The court forced appellants to go to trial while the jury docket was undisposed of, and while they were on the non-jury docket.

The case was tried on the following issue :

1. Appellants tendered the issue that the goods were the property of Ewing and subject to the levy of appellants.

To these appellees replied :

1. By general denial.

2. That the goods belonged to Willis & Bro. for the following reasons :

1. Because Ewing bought the goods from appellees on time and with no intention of paying for them.

2. Because Ewing obtained the goods under false and fraudulent pretenses and representations.

3. Because Ewing represented himself as being solvent, which appellees believed and relied on, when in truth and fact he was insolvent when he purchased the goods.

4. Because Ewing bought the goods with no intention of paying for them, and for the purpose of delivering them to Corsicana creditors in payment of their debts.

5. Because Blooming Grove, fifteen miles west of Corsicana, was the place named by Ewing to Willis as the place of destination of the goods, and they had not reached their destination, and were still in transit when the writ of appellants was levied.

To these issues appellants replied by supplemental issues as follows :

1. General denial.

2. That appellees, with full knowledge of all the facts, sued Ewing for the purchase price of the goods in controversy, in which they alleged the sale to Ewing, and caused an attachment to be levied on these goods, knowing that they had not reached their destination, and that appellees did not dismiss their attachment proceedings until they found prior attachments would about consume the goods, and that by reason of these proceedings, appellees had lost their right to stop the goods in transit.

To these issues appellees replied by supplemental issues as follows :

1. That at the time they sued Ewing and levied their attachment they did not know Ewing had obtained the goods under false pretenses.

2. That at the time they sued Ewing and levied their attachment, they did not know Ewing was insolvent when he purchased the goods.

3. That at the time they sued Ewing and levied their attachment they did not know the transit of the goods had not ended, but believed the goods had been delivered to proper authority and the transit ended.

The trial resulted in a judgment for appellees.

The court filed its conclusions of law and fact in which the court finds as facts the following:

1. That Ewing bought the goods with no intention of paying for them.

2. That when he bought the goods he represented himself as solvent, but in truth and fact he was insolvent then and subsequent to the proceedings in this case.

3. That Allyn & Co. had no notice of the fraud of Ewing, and was in no way connected with the same.

4. That appellees, on the 10th of September, sued Ewing and caused an attachment to be levied on these goods, but that this was done under the belief that Ewing had sold the goods and ended the transit, and that their remedy was by attachment. That having two days later learned that Ewing had not transferred the goods, they filed their claim bond.

From these findings the court deduced the following conclusions of law.

1. That appellants, C. H. Allyn & Co., were not affected by the fraud of Ewing.

2. That appellees, P. J. Willis & Bro., could exercise the right of stoppage *in transitu*, and that the filing of their claim bond had the effect to dismiss their attachment suit.

3. That appellees, Willis & Bro., did not waive their right of stopping the goods in transit by suing Ewing and levying an attachment on these goods because done under a mistake of facts as to the status of the goods.

The sixth assignment was to the effect that the court erred in refusing to grant appellants a new trial on the ground of newly discovered evidence to the effect that Fox had bills of lading for these goods at and before their delivery to him.

*R. S. Neblett* and *Jno. D. Lee*, for appellants, on the refusal to grant a continuance, cited: R. S., art. 1277; Chilton *v.* Reeves, 29 Tex., 275; Carter *v.* Eames, 44 Tex., 544.

On the order of trial, they cited: R. S., arts. 1287, 1289, 1290; Sayles' Tex. Prac., sec. 609; McCoy *v.* Jones, 9 Tex., 366; Kirkland *v.* Sullivan, 43 Tex., 233.

On the right to reclaim the goods and stop them *in transitu*, they cited: Moore *v.* Anderson, 30 Tex., 225; Woodson *v.* Collins, 56 Tex., 185; Iglehart *v.* Downs, 19 Tex., 343; Fox & Bro. *v.* Willis, 60 Tex., 373; Stark *v.* Alford, 49 Tex., 260; Vickery *v.* Ward, 2 Tex., 212; Moore *v.* Gammel, 13 Tex., 120; Howeth *v.* Mills, 19 Tex., 295;

Bishop on Cont., sec. 661; 5 Wait's Acts. and Def., 616, 617; Benj. on Sales, 482, 433; Woodruff v. Noyes, 15 Conn., 335; 2 Schouler on Pers. Prop., 632, 641; Joslin v. Cowee, 52 N. Y.; Bigelow on Estop., 562, 601; Brown v. Littlefield, 11 Wend., 467; R. S., art. 1258; Dibble v. Sheldon, 10 Blatchford, 178; Byard v. Holmes, 4 Vroom, 119; Story on Sales, sec. 446, 447; Rawson v. Turner, 4 Johnson, 473; Butler v. Hildreste, 5 Metcalfe, 49; Sanger v. Wood, 3 Johnson's Ch., 421.

*Simkins & Simkins*, for appellees.

STAYTON, ASSOCIATE JUSTICE.—The application for a continuance does not contain the requisites of the statute for a first continuance; nor does it contain such statements as to the diligence used to procure the attendance of the witness, or as to the materiality of his testimony as would show that any injury resulted from the action of the court below.

On applications not in compliance with the statute, the granting or refusing of a continuance, as has often been said, is addressed to the discretion of the trial court, and its ruling will not be disturbed by this court, unless it be made clearly to appear that the court has abused its discretion. No such thing is shown by the record in this case. T. & P. R'y Co. v. Hardin, 62 Tex., 369, and citations.

It appears that a jury had been demanded by the defendants at the proper time, and that the cause had been placed on the jury docket, from which the plaintiffs moved to strike it on the ground that the jury fee was not paid on the first day of the term. This motion was sustained, although, as appears from the bill of exceptions, the jury fee was paid before the motion was filed.

The cause was then called for trial in its regular order, and the plaintiffs objected to its trial, on the ground that all the jury cases had not been disposed of; but this objection was overruled.

We are of the opinion that there was no error in this ruling of the court.

The motion to strike the case from the jury docket should not have been sustained (Gallagher v. Goldfrank, 63 Tex., 474), and the appellants cannot be heard to complain that they were not permitted to reap a further advantage than had they already, by the erroneous ruling of the court on their motion.

If, however, the cause had been tried out of its regular order, this would be no ground for reversal, unless it was shown that some injury resulted therefrom, as was made probable in Kirkland v. Sullivan, 43 Tex., 235; R. S., 1290, 1287.

The issues, on which this cause was tried, made the right of the appellees to depend on two questions :

1st. Were the goods obtained by Ewing from appellees by fraud, and the contract of sale subject to be avoided on that ground?

2d. Had the right of the appellees to stop the goods in transit ceased?

Both of these questions are claimed by counsel to be affected by the further question : Whether the appellees, by bringing suit against Ewing for the price of the goods and causing them to be seized under writ of attachment, waived their right to rescind the sale, or to recover the possession of the goods, if the suit was brought with knowledge of the facts which entitled them to avoid the sale to Ewing, and with knowledge or means of knowledge that the goods were still in transit?

It is claimed that appellees thereby elected to waive their right to rescind the sale or to obtain the possession of the goods.

That an action was brought for the price of the goods is clear as it is that an attachment was sued out and levied.

One of the grounds for attachment was that the goods had been obtained by false pretenses. No other ground of fraud in obtaining the goods is shown than that Ewing represented himself to be solvent, when, in fact, he was utterly insolvent.

This pretense of solvency, then, no other false pretense being shown, must be deemed the false pretense upon which the writ of attachment was founded. If so, it must have been known to the appellees when they instituted their action and sued out the writ of attachment founded on that identical false pretense, which was the fraud through which the goods were obtained.

They may not have known the secret intention of Ewing never to pay for the goods, which the court found to exist, but the facts from which the court drew this conclusion were open to them, and with knowledge of the fraud through which the sale of the goods was obtained, it is but proper to hold them affected with knowledge of the fraud, which entitled them to rescind the contract of sale.

Speaking of cases in which the owner of goods has been induced to make a sale by the fraud of the vendee, the rule is thus stated :

"This contract is voidable at the election of the vendor, not void *ab initio*. It follows, therefore, that the vendor may affirm it, or may rescind it. He may sue in assumpsit for the price, and this affirms the contract, or he may sue in trover for the goods or their value, and this disaffirms it." Benj. on Sales, 433, in note to which the authorities, English and American, are collected.

We therefore conclude that the appellees had such notice of the

fraud, through which they were entitled to rescind the sale to Ewing at the time they instituted their action against him to recover the value of the goods, as to make their act in bringing that action a bar to their right afterwards to rescind the contract of sale.

The two actions are inconsistent.

It is admitted that the transit of the goods had not been so far completed as to cut off the right of the appellees to seize them *in transitu* at the time this action was brought.

Nor can it be claimed that the levy of attachments by other creditors of Ewing defeated the right of the appellees to repossess themselves of the goods. Benj. on Sales, 836, 862; Waits' Acts & Def., 616; Chandler *v.* Fulton, 10 Tex., 2.

It is claimed, however, that the former action, in which appellees sought to recover from Ewing the price of the goods and caused an attachment to be levied upon them, operates as an abandonment of their right to seize the goods in transit—that the one action is so inconsistent with the other that by the former the appellees must be held to have elected not to assert their right to reacquire possession of the goods.

The court below found, as a fact, that the suit was brought and the attachment sued out under ignorance of the facts that showed the goods were still in such condition as to authorize their seizure in transit by the appellees, and it seems to us that the proof fully sustains this finding.

The court further found that when knowledge of the fact that the goods had not been delivered to Ewing, or to a *bona fide* vendee, was obtained by appellees, they abandoned the attachment suit, in so far as it related to the claim for the value of the goods seized, and it seems to us that the evidence justified this conclusion.

The fact that the entire action in which the attachment was sued out was not discontinued in vacation, does not militate against this finding, for that suit was brought to recover the value of other goods, as well as the value of those seized under the attachment which had been delivered to Ewing before that suit was brought; and as to that branch of the case, appellees desired it to stand, that therein they might obtain judgment for the value of goods in reference to which their right to seize in transit had ceased.

We have no statute which provides for the discontinuance in vacation of a part of a cause of action sued on.

Under the finding of the court, even if the effect of the former suit and attachment was, ordinarily, such as claimed by the appellants, the appellees would not be precluded by their former action from

asserting their right to the possession of the goods in any lawful manner. So it was held in Fox & Bro. *v.* Willis & Bro., 60 Tex., 373.

It seems to us, however, that, on principle, there is a difference between the effect of a suit to recover the value of goods which a vendee has acquired through fraud, and a suit, by attachment or otherwise, to recover the price of goods sold without fraud, which, however, the seller has the right to arrest in transit in case of insolvency of the vendee, in so far as relates to the right of the vendor to institute another suit to recover the possession of the thing sold.

In both cases title to the property passes to the vendee by the sale, but when the sale is procured by the fraud of the vendee the right to rescind exists, while if the sale is without fraud the vendor has no right to rescind it, but has simply the right to repossess the goods and thereby cause his lien for the purchase money to become available.

In the former case the right to receive the price is utterly inconsistent with exercise of the right to rescind, while in the latter the right to recover the price of the thing sold, and to seize it to force its payment, are not inconsistent.

Fraud is the ground for rescission, and this may exist in a case in which the right of stoppage *in transitu* is found, but the basis of that right is the insolvency of the vendee without reference to whether the contract of sale was procured by fraud.

Fraud, and the right to rescind resulting therefrom, may be waived without affecting the right resulting from insolvency.

In Wordruff *v.* Noyes, 15 Conn., 335, it seems to have been held that if the vendor seizes the goods sold, as the property of the vendee, while in transit, by attachment, thereby the right to stop them *in transitu* was destroyed; and we find the rule so stated by Mr. Wait and also by Mr. Bishop, on the authority of that case, 5 Wait's Acts. and Def., 616; Bishop on Contr., 661.

Upon these authorities the same rule was intimated in Halff, Weis & Co. *v.* Allyn & Co., 60 Tex., 278, the correctness of which subsequent reflection causes us to doubt.

We have not the case referred to before us, but it seems to us that the rule cannot be sustained on any other theory than that by stopping the goods in transit the vendor rescinds the contract of sale.

If this be not the effect of that act, we do not see how, in ordinary cases, the assertion of the right to have the price of the goods paid by their sale through an attachment suit is inconsistent with the right to stop the goods in transit in any lawful manner; for in either case, as we understand the rule, the title of the vendee is recognized and the vendor simply asserts against that title a lien.

Whatsoever doubt there may have been in former times as to the effect of stopping goods *in transitu*, we think it was settled by the great weight of authority, English and American, "that the true nature and effect of this remedy of the vendor is simply to secure the goods to his possession, so as to enable him to exercise his rights as an unpaid vendor, not to rescind the sale." Benj. on Sales, 867, 868, and citations ; Wait's Acts. and Def., 618, and citations.

Such is certainly the rule in this state. In Chandler *v.* Fulton, 10 Tex., 23, it was said: "The property in the goods unquestionably was in Nicholson (the vendee), and the admission of that fact by the consignors or their agents could not affect the right of stoppage *in transitu*. That right does not rest upon the ground of a rescission of the contract. It merely places the consignor in the position in which he was before the *transitus* began, and enables him to enforce the right of lien, which arises in every vendor on the non-payment of the purchase money, and continues until the goods come, with his consent, to the actual possession of the vendee or his agents. It is a right bestowed upon the vendor in this case to prevent the injustice which would be done him if, in consequence of the vendee's insolvency, while the price of the goods was yet unpaid, they were seized upon in satisfaction of his liabilities, and thus the goods of one man were to be disposed of in payment of the debts of another."

There may arise cases in which a vendor would be estopped to assert his right of stoppage *in transitu*; but, if so, it seems to us that this must result from some fact other than suit and levy of an attachment on the goods to secure the payment of the purchase money; for the one remedy, as the other, recognizes the title of the vendee.

If the goods can be brought into the possession of the vendor without legal process he may, after notice and the allowance of a reasonable time to the vendee to pay for and take them, sell them, and appropriate so much of the proceeds as may be necessary to the payment of their price, and the vendee will be entitled to any surplus.

If the goods do not sell for enough to pay the debt the vendor can recover the balance from the vendee in any proper action.

This is but one way of enforcing the lien which the law gives to the vendor, and if the same thing is sought to be done through an attachment suit, which is surely not the most appropriate remedy, still this is but an effort to acquire through the officer and to enforce a lien existing by law as well as acquired by the levy of the writ.

That sequestration would be a proper remedy in case the vendor could not get possession otherwise we have no doubt, and we are of

the opinion that the remedy sought in this case is a proper one; for as the property had been seized by the writs of others, its possession could not otherwise be properly acquired.

The evidence of the witness, Fox, claimed to have been newly discovered, in view of the evidence given by him, and of the admitted facts of the case, could not have changed the result; his mere custody of the bill of lading to receive and forward the goods was of no consequence.

We find no error in the judgment and it is affirmed.

AFFIRMED.

[Opinion delivered November 27, 1885.]