**WALKER v. RAMMING.   (No. 9968.)**

(Court of Civil Appeals of Texas.   Fort Worth.
April 29, 1922.)

1. **Exchange of property** &#8690;13(3) — **Evidence insufficient to show market value of automobile exchanged for oil stock.**

In an action to recover the value of an automobile exchanged for oil stock, evidence *held* insufficient to show the market value of the automobile.

2. **Exchange of property** &#8690;13(3) — **Evidence held insufficient to show oil stock exchanged for automobile to be worthless.**

In an action to recover the value of an automobile exchanged for oil stock for alleged fraud on the part of the defendant, evidence *held* insufficient to show that the stock was worthless.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by W. F. Ramming against Sanders Walker and others. From judgment for plaintiff against defendant named and another, defendant named appeals. Reversed and remanded, with instructions.

Nelson & Kilgore, of Wichita Falls, for appellant.

Nicholson & Felder, of Wichita Falls, for appellee.

BUCK, J.   Plaintiff, W. F. Ramming, on September 5, 1919, filed suit against the Texas-Electra Refining & Oil Company, J. A. Bordeaux, Sanders Walker, Charles F. Hortenstein, V. L. Bordeaux, and W. T. Wood, alleging that the Texas-Electra Refining & Oil Company was a corporation incorporated under the laws of the state of Arizona and that the other defendants were officers and directors of said corporation.   He alleged he had purchased on May 18, 1918, from the defendant corporation 10 shares of its capital stock of the par value of $100, and, subsequently, on July 22, 1918, purchased from W. T. Wood 300 shares of said stock of the par

value of $3,000. He further represented that the defendants, and especially defendant Sanders Walker, represented to him and to the public in general that said corporation would build a refinery at Electra, Tex., for the purpose of refining crude oil and selling the by-products therefrom, and further represented to the plaintiff and the public in general that they were the owners of 247.59 acres of oil-producing lands in the heart of the Electra Oil field, situated in Wichita county. He pleaded various misrepresentations made in the advertisements and promotion prospectus of the corporation and in letters published therein, and in letters by Sanders Walker to him, and further pleaded that relying on the truth of the statements made in such advertisements and letters, he purchased the stock aforesaid, whereas in truth and in fact the defendants did not own any land in the Electra oil fields, did not build a refinery thereon, and that the corporation was at the time of the filing of the suit and at the time of the purchase of the stock insolvent and had become a defunct corporation. He specially pleaded that he relied on the statements and representations, which he alleged to be false, made to him by Sanders Walker, to the effect that the stock which W. T. Wood proposed to trade plaintiff for an automobile was good stock and would be a good dividend producer. He alleged that said automobile was used and needed by said company to enable W. T. Wood to travel over the country and sell capital stock of the corporation, and that Walker made these misrepresentations in order to induce plaintiff to sell and deliver to defendant Wood the automobile, which he alleged was of the reasonable value of $3,000 in cash. He alleged that the 310 shares of stock which he had purchased were worthless.

Defendant Walker filed his amended answer on June 27, 1921, in which he pleaded a general demurrer, a general denial, and further pleaded that the corporation named had been in existence a long time before the defendant had ever heard of the same, but that he purchased stock therein, and from May 4, 1918, until the 10th day of August thereafter, was identified with said corporation; that he was a director and trustee (?) of said corporation, but he denied that he ever endeavored to induce plaintiff to purchase stock in said corporation or recommended to him the purchase thereof. He further pleaded that during the time he was an officer of said company, and for a short time prior thereto, he believed in the honesty, integrity, and good prospects of said company, and he never made any fraudulent representations in regard to said corporation, and any statements he may have made, none of which were admitted and all denied, were made, if at all, in the utmost good faith. He specially denied that any representations made with reference to the ownership of any land in the advertisements of the corporation were made by him or under his authority. Attached to his answer was a financial report made on behalf of the corporation by the defendant Walker, covering the period from May 4th to August 8, 1918, which showed that at the expiration of said period there was $276.82 in the treasury.

Only Walker and Wood were served with citation. On May 20, 1921, the defendant made demand for a jury and paid the fee required by law to secure the same. On June 7, 1921, the judge of the district court made a setting, without consulting the litigants, of the nonjury cases to be tried in his court during the week beginning with Monday, June 20, 1921, and cause said list of cases to be printed. On June 20, the date said cases so set were called for orders, announcements, and definite settings, counsel for defendant Walker called the attention of the court to the fact that the case at bar was a case in which a jury had been properly demanded prior to any setting thereof, the jury fee having been paid, and the case having been placed upon the jury docket; said counsel at that time also gave notice that said defendant was insisting upon his right to trial by jury. Whereupon the court stated that the case had been on the docket for a long time, and that the jury fee had not been paid in time for the case to have a place upon the jury docket. Defendant's counsel called the attention of the court to the fact that but two of the defendants had been cited, and that at no time since its filing had said case been previously called for trial; that inasmuch as a jury drawn under the interchangeable jury law, which is operative in Wichita county, was then and there in attendance upon the court, and that no delay would result from the defendant's jury demand being complied with, the court should accede to such demand. The plaintiff's counsel announced to the court plaintiff's willingness to try said cause before a jury. Whereupon the court said that by reason of his rules adopted for his court the jury demand came too late, and that, since he was trying nothing but nonjury cases at that time, the trial of the case at bar would be proceeded with as such nonjury case.

Thereafter, on June 27th, the date at which the trial of said cause had been deferred by reason of the trial of other cases previously set, the court called said case for trial, and the defendant Walker again renewed his demand for a jury and called to the attention of the court the fact that a jury serving and drawn under the interchangeable jury law was at that time in attendance upon said court and serving in the other two district courts of the county, and again urged his demand for a jury trial; but the court overruled said demand, and proceeded to try the

case on the nonjury docket. Upon the trial judgment was rendered against defendant Wood by default, and against defendant Walker upon the testimony, for $3,658 against Wood and Walker jointly and severally, the $658 of which was alleged to be interest at 6 per cent. per annum from the respective dates of the purchase of the stock mentioned. Defendant Walker has appealed.

The court has filed his findings of fact and conclusions of law, and in addition the appellant has brought up to this court a statement of facts, agreed to by counsel of both sides and approved by the court.

Appellant's first assignment is directed to the action of the trial court in refusing to permit the instant case to be submitted to a jury, alleging that a demand had been made more than a month before the trial, the jury fee paid, and that there was a jury in attendance upon the court at the time. Attached to the bill of exceptions upon which this assignment is based, the court has made the following explanation and qualification thereto:

"This cause was filed on the 5th day of September, 1919, and so far as the defendant Walker is concerned was an appearance case as early as the July term, 1920, of the Eighty-Ninth district court.

"The Eighty-Ninth district court was created in June, 1920, and began its sessions the first Monday in July, 1920, with an aggregate of from 1,200 to 1,600 cases. In order to facilitate the business, and get rid of this tremendous amount of litigation, I found it necessary to adopt and promulgate some rules of practice. The law gives this court four terms a year, each term lasting three months. I made a rule allowing all parties to ask for pay and have their cases passed to the jury docket at any time during the appearance term of the court; this gave all parties just three months after the day fixed by the statute to make jury demands.

"The county of Wichita has three district courts, and three district courtrooms, but one is a nonjury courtroom provided with no jury seats or 'box' and not large enough to accommodate a jury, so by mutual arrangement between the judges we never have jury trials on in all of the courts at the same time.

"The instant case appeared on the nonjury docket after I had finished my jury trials for the April term, so, with a number of other cases, was set down as a nonjury case and published in a local paper. At the time set for trial I was holding court in the nonjury courtroom; both the Thirtieth and Seventy-Eighth district courts being in session, and, though we had an interchangeable jury for the week, I could not at that time have used them, not only because I did not have the room, but also because the requisite number of jurors were not available for all of the courts. To have granted the request would have had the effect of working a continuance of the case for the term, as I had fully disposed of my jury docket for the term and had announced to all interested parties that I would try no more jury cases during the April term, which closed the 2nd day of July.

"Whatever may be the effect of allowing jury demands to be made at any time in other courts, I wish to say that if it is allowed here it will result in great delay and positive injustice in many cases. Litigants will wait till cases are set for trial by the courts, and then at the last moment demand a jury, and it will almost invariably result in a long postponement or a continuance of the case.

"It is stated in the bill that the demand was actually made on the 20th of May, 1921. I assume this is so, but I know the case was still on the nonjury trial docket when I published the settings of said docket and assuming that the demand came as late as May 20th, it was too late to get a place on the jury docket where it could have been tried in the April term at all, for a large number of jury cases went over as it was, and I tried cases every day of each jury week of the term.

"I believe it is but reasonable that the court should have notice of the desire of the litigant to have a jury before the trial dockets are arranged for the term at least, and I think also that if the litigant lets his case pass over for one or more entire terms, without making a jury demand, he should not be heard to complain, if the court takes it for granted that he does not want a jury. With these explanations the bill is approved.

"P. A. Martin, Trial Judge."

Article 1, § 15, of the state Constitution, provides:

"The right of trial by jury shall remain inviolate. The Legislature shall pass such laws as may be needed to regulate the same, and to maintain its purity and efficiency."

Article 5173, V. S. Tex. Civ. Statutes, provides the right of trial by jury shall remain inviolate, subject to the following rules and regulations.

Article 5174 is as follows:

"No jury trial shall be had in any civil suit, unless an application therefor be made in open court and a jury fee be deposited, or an affidavit be made of inability to make such deposit, as hereinafter prescribed."

Article 5175 reads:

"Any party to a civil suit in the district or county court desiring to have the same tried by jury, shall make application therefor in open court on the first day of the term of the court at which the suit is to be tried, unless the same be an appearance case, in which event the application shall be made on default day."

By a number of authorities the last-quoted statute is held not to be mandatory, and a demand for a jury made subsequent to the appearance day or subsequent to the default day in an appearance case shall nevertheless be held good, unless the compliance with the demand for a jury would necessitate the continuance of the cause or otherwise be prejudicial to the rights of the adverse party. See Allen v. Plummer, 71 Tex. 546, 9 S. W.

672; Allyn v. Willis, 65 Tex. 65; Hardin v. Blackshear, 60 Tex. 132; Berry v. Railroad, 60 Tex. 654. In the case of Kenedy v. First National Bank, 136 S. W. 559, the Galveston Court of Civil Appeals said:

"In Scott v. Rowland, 14 Tex. Civ. App. 370, 37 S. W. 381, this court held that it is not the intention of the statute to deny to any litigant the right of trial by jury, but to regulate the exercise of such for the purpose of facilitating business and lessening the expenses of the courts, and that a litigant can only be deprived of such privilege when his delay in demanding a jury and tendering the jury fee will probably work injury to his adversary."

In Watson v. Cloud, 225 S. W. 807, this court, speaking through Justice Dunklin said:

"By article 5178, it is provided that on call of the trial docket on the first day of the term of court applications for jury trials shall be then made, and that the same application shall be made upon the call of the appearance docket on appearance day of the term. But it is a well-settled rule of decisions of this state that those articles of the statutes are not mandatory, and that failure of a party to make such application at the times prescribed in those articles does not forfeit his constitutional right to have a trial by jury when such failure does not operate to unreasonably delay the trial or prejudice the rights of the opposite party"—citing cases.

It will be noted by reference to the court's qualification of appellant's bill of exception, hereinabove set out, that the trial court made a rule allowing all parties to ask for, pay for, and have their cases passed to the jury docket at any time during the appearance term of court, thus giving three months after the day fixed by the statute to make jury demands; that the courtroom in which this case was tried is not provided with jury seats and not large enough to accommodate a jury; that the jurors drawn under the interchangeable jury law for the week of the trial were busy in other courts during the week in which this case was tried. The court further states that, had defendant's demand for a jury on May 20th been called to his attention, such demand was too late for the instant case to get a place on the jury docket where it could have been tried in the appearance term, for a large number of jury cases went over for lack of time, and that he tried cases every day of each jury week of the term. We do not think that the fact that the defendant's case could not have been tried during any jury week of the term subsequent to his payment of the jury fee because other cases previously set took up all the time, should be held to preclude defendant from the right of having a jury trial. It appears from the caption that the term of court at which this case was tried adjourned July 2, 1921, and that the Eighty-Ninth district court was trying only nonjury cases from June 20th to the end of the term. It does not appear how many jury weeks there were from May 20th until the court finally took up his nonjury docket. If there were several jury weeks intervening between May 20th and June 20th, especially in the absence of any objection on the part of plaintiff to having the case placed upon the jury docket, and when plaintiff's consent thereto is shown, it seems to us that the defendant was entitled to have his case tried by a jury. We recognize the right of the court to make reasonable rules with reference to demands for a jury, but think that probably in the instant case the court adhered too strictly to his rule that a demand for a jury should be made and the jury fee paid during the appearance term. We do not understand that it was the duty of the appellant to see that the cause was placed on the jury docket. Ordinarily, such an act is considered ministerial and performed by the clerk. It so happens that all the members of this court have served as district judge, and we realize fully the importance of trial courts having rules looking to the expeditious and orderly trial of cases, but such rules must be in obedience to the constitutional provision above quoted, as construed by our appellate courts. While we are inclined to think that the rule laid down by the trial court in the instant case, to wit, that a demand for a jury must be made during the appearance term of the court, is perhaps an undue limitation on the litigant's constitutional right to a trial by jury, but inasmuch as we have concluded that this cause must be reversed on account of another assignment, we will not definitely decide whether or not this assignment should be sustained.

[1] The second proposition is that the court erred in his seventh finding of fact, that plaintiff sold to the defendant W. T. Wood his automobile for $3,000, which was paid for in capital stock of the company at par value, and that at the time of said trade said car was worth $3,000. It is urged that this finding is without support in the evidence. The only testimony we find in the statement of facts with reference to the value of the automobile is the following testimony of plaintiff, the only witness who testified:

"The automobile that I traded to Col. W. T. Wood was a seven-passenger Mercer. The cost of that car was $4,500. I had owned this car about eight months prior to the time of the trade. I don't know exactly how far it had been run. It hadn't been run very far. I had another car besides this one at that time. The other car was—one that I used.

"This car had not been roughly used or mistreated in any way. It was in good condition. I know the market values of cars of the kind and character this car was at that time. I think it was $4,500.

"Q. That was the cost price, but what was the price of a car of this kind that had been—

"The Court: I will explain to Mr. Ramming. Do you know what this car would be reasonably worth, and then what it could be reasonably sold for, for cash, within a reasonable length of time. What it could have been cashed for at the time you sold it? Do you know that market value; that is, what it takes to constitute market value?

"A. No, I don't know just what it would have brought on the market."

This testimony evidently does not show the market value of the automobile, nor is it shown that the automobile had no market value. The burden of proof was on the plaintiff to show the market value of the automobile, and, in the event that the automobile had no market value at the time and place it was traded to the defendant Wood, such burden of proof was on the plaintiff to show that no market value existed and to show its intrinsic value. We do not think that the plaintiff met the burden of proof in this respect, and for such failure the judgment of the trial court must be reversed.

[2] Another assignment is to the finding of the court that, at the time plaintiff purchased the $3,100 worth of capital stock, said stock was practically worthless, and that defendant knew or could have known at that time that said stock was practically worthless. It is urged that there was no testimony in the record as to the value of the stock. The only evidence we find as to the value of the stock is the testimony of the plaintiff that the corporation never commenced the building of a refinery, as far as he knew; that he inquired as to whether the corporation owned any land at all in Wichita county or elsewhere, and that he found that they did not own any land; that they had a lease on about 60 acres, he guessed. That was all that he could find that they ever had a lease on. We think this testimony is insufficient to show that the stock was worthless, and that the testimony above cited with reference to the foregoing assignment fails to support the finding of fact by the court that the corporation was not a going concern, but had long since ceased to function, and that the majority of the officers of the company had left the country, and said corporation was insolvent. We fail to find any other testimony in the record tending to support this last finding.

For the reasons stated, the judgment of the trial court must be reversed and the cause remanded, with instructions to the trial court to place it on the jury docket. The judgment in favor of plaintiff against W. T. Wood, from which no appeal has been taken, is left undisturbed.

Reversed and remanded in part; left undisturbed in part.