The Evansville and Terre Haute Railroad Company *et al. v.* Erwin.

No. 8613.

THE EVANSVILLE AND TERRE HAUTE ‧RAILROAD COM-
PANY ET AL. *v.* ERWIN.

84　457
142　53

SALE OF PERSONAL PROPERTY.— *Cash on Delivery.* — *Conditional Sale.*—
Where personal property is sold for cash on delivery, the sale is condi-
tional, and the title to the property will not vest in the purchaser until
the terms of sale are complied with.

SAME.—*Bills of Lading.*—*Evidence of Title.*—*Stoppage in Transitu.*—As a gen-
eral rule, a bill of lading is evidence of title to personal property; but if
it be obtained without the authority of the owner and vendor of the
goods, or by fraud, it will not authorize a transfer so as to defeat the ti-
tle of the original owner or affect his right to stop the goods in transit.

From the Gibson Circuit Court.

*A. Iglehart, J. E. Iglehart, H. A. Mattison* and *A. Gilchrist,*
for appellants.

*R. M. J. Miller,* for appellee.

HOWK, J.—In this case the appellee, the plaintiff below,
alleged in substance, in his complaint, that he was the owner
and entitled to the possession of four hundred bushels of
wheat then in "White-Line Car, E. & T. H., No. 1887,"
standing on the side-track at Miller's Station, in Gibson county,
Indiana, of the value of $375, which the appellant, the Ev-
ansville and Terre Haute Railroad Company, had possession
of without right, and unlawfully detained from the appellee;
wherefore, etc.

On the application of the appellant George H. Start, he was
made a defendant in this action.  The cause was put at issue
and submitted to the court for trial, and, at the appellants' re-
quest, the court made a special finding of the facts, and stated
its conclusions of law thereon in favor of the appellee.  The
appellants severally excepted to the court's conclusions of law,
and judgment was rendered thereon in appellee's favor, and
against the appellants, to which judgment they severally and
separately excepted, and have appealed therefrom to this court.

Errors have been assigned here by the appellant which call

in question the court's conclusions of law upon the facts specially found. The special finding of facts and the court's conclusions of law thereon were, in substance, as follows:

" Be it remembered, that on the trial of the above cause before the court, the defendants requested the court to find the facts specially, and state the conclusions of law arising thereon, with a view of excepting to the decision of the court upon the questions of law involved in the trial.

" 1. The court finds the facts to be as follows, to wit: On the 24th or 25th of March, 1879, the plaintiff, then being the owner of the wheat in controversy, made an agreement with one Hart to sell and deliver to him at Miller's Station, a point on the line of the Evansville and Terre Haute Railroad, one car load of wheat at and for the price of ninety-three cents (93 cents) per bushel; the agreement between the plaintiff and the said Hart being that the wheat should be delivered, weighed and paid for at Miller's Station, and that the payment should be made upon delivery of the wheat, the plaintiff at the time the agreement was made stating that Hart was a stranger to him, and that he must pay upon delivery, which Hart assented to, and represented that he had the money to pay for the wheat then.

" Hart then procured the defendant, the railroad company, to leave an empty car, suitable for the shipment of wheat, on the switch at Miller's Station.

" 2. Subsequently, on the 27th of the same month, the plaintiff hauled and delivered three hundred and eighty-four bushels of wheat, it being the wheat he had agreed with Hart to deliver, and being the same now in controversy; the wheat was weighed at Miller's Station and put by plaintiff in the car furnished by Hart on the side-track of the defendant's road. When the plaintiff had finished delivering the wheat, Hart nailed up the car ready for shipment. The plaintiff calculated the amount due, and asked Hart for his money. Hart replied that he did not have any money with him, but that it would be up next day. Plaintiff then told Hart he could not

have the wheat until it was paid for.   Hart assented to this, and said that he was in no hurry for the wheat; that he would let it remain there until he obtained the money ; that he would have the money next day at Patoka, and if plaintiff would come to Patoka he would pay him there, or bring the money to him, as he preferred, to which the plaintiff assented; but no definite agreement was arrived at between the parties whether they should meet at Patoka or whether Hart would bring the money to plaintiff.

"And thereupon Hart went away on foot towards Patoka, and plaintiff went to his home, one mile from the point where the wheat was delivered.   The parties separated about sundown on the evening of the 27th.   Miller's Station is situated in Gibson county, Indiana, about two and a half miles north of Patoka, on the defendant's road.   Defendant, the railroad company, has no agent at that point, and no agent of the company was present at the time of the weighing and delivery of the wheat.

"3.   About 9 o'clock on the night of the 27th, Hart applied to the agent of the defendant, the railroad company, at Patoka, at his residence, for a bill of lading, informing him that he had the car loaded, and that he desired its early shipment.   The agent refused to issue the bill of lading that night.   Again, on March 28th, at the hour of 7 : 20 A. M., Hart applied to the same agent at the office of the railroad company, in Patoka, for a bill of lading, representing to the agent that he had the car loaded with wheat, and thereupon the agent gave him a bill of lading, of which the following is a true copy:

"'(Form 18.)—Where rates per car load are quoted, it is meant to include twenty thousand (20,000) pounds, unless otherwise specified.   Twenty-four thousand (24,000) pounds is the maximum weight per car that this company has fixed as the weight to be loaded thereon, and any excess over that weight on any car may be unloaded at shipper's

expense, or double rates of freight charged on the excess above said weight, at the option of this company.

"'Evansville and Terre Haute Railroad, Patoka Station, March 28th, 1879.

"'Received from W. B. Hart the following packages (contents and value unknown), in apparent good order, to be transported over the line of this road to the company's freight station at Evansville, and there to be delivered to L. Ruffner, Jr., or order, on payment of freight, and charges on payment of freight, charges in par funds upon the following conditions:

"'That the company will not be held responsible for leakage of liquids, breakage of glass or queensware, the injury or breakage of looking-glasses, glass show-cases, picture frames, stove castings and hollow-ware, or for any injury to hidden contents of packages, nor for the loss of weight of grain or coffee in bags, or rice in tierces; nor damage ensuing to any article carried, from the effect of heat or cold; for the loss of nuts in bags, or lemons or oranges in boxes, unless covered with canvas; or loss or damage to goods occasioned by providential causes, or by fire from any cause whatever, while in transit or at station.

"'It is agreed, that all the articles at the several way stations and platforms, where the company has no agent, will be at the risk of the owner, shipper, or consignee, from the moment such articles are unloaded, as directed, or marked.

"'It is further agreed, that the company will exercise the right of placing in store, at the expense and risk of the owner, all articles of freight not removed within twenty-four hours after arrival at depots.

"'It is further agreed and understood, that grain in bulk will be at the owner's risk of short weight, except when caused by negligence of the company, and that property, under this bill of lading, will be subject, at its owner's cost, to necessary coopering or bailing.

"'It is expressly agreed and understood, that the shipper

or agent of the property herein named, by accepting this bill of lading, agrees to all its stipulations, exceptions and conditions.

| Marks. | Articles. | Weight subject to correction. | Charges. | |
|---|---|---|---|---|
| W. L., 1887 . . . . Copy of receipt received of G. H. Start & Co., for 1 car of wheat, No. 1887, 385 bush. @ 93½. . . . . . . . .Signed, W. B. HART. | One car bulk wheat. Signed, E. C. COWDEN, Ag't. | 23,100 | $359 | 97 |

Endorsed on back, L. RUFFNER, JR.'

" Which he carried away with him, and went south to Evansville on the train that passed Patoka at 7 : 41 A. M.

" 4. Hart reached Evansville, Ind., about 9 o'clock on the morning of the 28th of March, 1879, and went directly to the office of the defendant George H. Start, and presented the bill of lading to him, who, having been informed by Ruffner, the consignee, that he was negotiating for the wheat, took the bill of lading, and paid Hart the full value of the wheat at that point, 93½ cents per bushel, and Ruffner assigned the bill of lading to Start. The wheat was purchased by Start from Hart, and the money paid Start, at 9 : 30 o'clock A. M. of said day.

"At the time of purchase the defendant Start had no notice of any claim to the wheat by the plaintiff or any other person, and bought the same in good faith.

" 5. On the morning of the 28th of March, the plaintiff went to the town of Patoka and inquired after Hart, and waited there until the arrival of the 11 : 30 A. M. train from Evansville. Hart not coming on that train, he then notified the railroad agent not to let the wheat be moved until he got his money, and was informed by the agent that he had already issued a bill of lading, and that Hart had taken it away with him on the first train south, and that he could not hold the wheat. The plaintiff then came to Princeton to inquire

as to his legal rights, and sent an attorney to Evansville on the 2 P. M. train to look for Hart.

"6. The defendant, the railroad company, on the 29th of March, 1879, brought the car containing the wheat that had been placed in it, as before found, from Miller's Station to Princeton, Ind., and was proceeding to deliver said wheat at Evansville, Ind., when plaintiff commenced this action, and seized and took it into his possession by virtue of a writ of replevin issued herein.

"7. Wheat of the quality of that in controversy was worth, at the time the same was placed in the car, and at the time of the agreement with Hart at Miller's Station, 91 cents per bushel, and at Evansville it was worth $93\frac{1}{2}$ cents per bushel, and, within a few days after this action was commenced, was worth in Evansville 96 cents per bushel, and has been worth as much as $1.05 per bushel in that market between the date of the taking of this wheat by plaintiff and the trial of this cause.

"8. Hart left the State without paying plaintiff any portion of the contract price of said wheat. The agent of the railroad company was notified of plaintiff's claim and his desire that the wheat should not be removed until payment was made to him before the car was moved.

"9. Upon the foregoing facts the court finds, as conclusions of law, that the title to the wheat in controversy did not pass from the plaintiff to Hart; that the plaintiff did no act or acts that amounted to a waiver of the condition precedent, that Hart should pay him in cash for the wheat before the title passed out of plaintiff.

"That the subsequent issuing of a bill of lading, and the attempted sale of the wheat, and assignment of the bill to defendant Start, does not, in law, preclude the plaintiff from regaining his property.

"That the plaintiff is entitled to a finding in his favor, that he is the owner of wheat in complaint mentioned, and for one cent damages.          O. M. WELBORN, Judge."

The Evansville and Terre Haute Railroad Company *et al. v.* Erwin.

The appellants' learned counsel say, in argument: "A single point is presented by the assignment of errors in this case, and that arises, we submit, from an unwarranted assumption by the court that the wheat was sold upon a condition precedent that the title should not pass until the purchase-money was paid, and that appellee had done nothing to waive his right to hold the same. We concede that, if property is sold upon condition that no property shall pass till the purchase-money is paid, then, the sale being conditional, no property can pass without the performance of the condition."

It will be observed that counsel claim the decision below to be erroneous, because of the court's "unwarranted assumption" of these two conclusions of law: 1. That the wheat was sold upon a condition precedent that the title should not pass until the purchase-money was paid; and, 2. That the appellee had done nothing to waive his right to hold the wheat. These were the legal conclusions of the court, from its special finding of facts. The court found the facts, in regard to appellee's sale of the wheat, to be as follows: Appellee agreed with one Hart to sell and deliver to him, at Miller's Station, on the E. & T. H. Railroad, one car load of wheat at 93 cents per bushel, payment therefor to be made upon delivery of the wheat, Hart assenting to appellee's statement that he must pay upon delivery, and representing that he had the money then to pay for the wheat. Upon these facts we think the court was authorized to state, as a conclusion of law, that appellee's sale of the wheat to Hart was made upon the condition precedent that Hart should pay the contract price for the wheat upon its delivery. "It is a general rule in all executory agreements for the sale of chattels, that the seller's obligation to deliver, and the buyer's obligation to pay or render equivalent, are concurrent conditions in the nature of conditions precedent." Where the circumstances of the transaction are such as to indicate that the seller agrees to transfer his property, in consideration of the buyer's actual payment of the agreed price on delivery,

"each party is bound to the other by concurrent condition— the seller to deliver, the buyer to pay." 2 Schouler Pers. Prop., p. 291.

Where payment is to be made simultaneously with delivery, and is omitted, evaded or refused by the vendee on getting the goods under his control, the delivery in such case is merely conditional, and the non-payment would be an act of fraud entering into the original agreement, which would render the whole contract void, and the seller would have the right instantly to reclaim the goods. 2 Kent. Com. 497.

In *Coggill* v. *Hartford, etc., R. R. Co.*, 3 Gray, 545, it was held by the Supreme Court of Massachusetts, that a sale and delivery of goods, on condition that the title shall not vest in the vendee until payment of the price, passes no title until the condition is performed, and the vendor, if guilty of no laches, may reclaim the property even from one who has purchased from his vendee in good faith and without notice. The court said : "The vendee, in such cases, acquires no property in the goods. He is only a bailee for a specific purpose. The delivery, which in ordinary cases passes the title to the vendee, must take effect according to the agreement of the parties, and can operate to vest the property, only when the contingency contemplated by the contract arises. The vendee therefore, in such cases, having no title to the property, can pass none to others. He has only a bare right of possession ; and those who claim under him, either as creditors or purchasers, can acquire no higher or better title. Such is the necessary result of carrying into effect the intention of the parties to a conditional sale and delivery. Any other rule would be equivalent to the denial of the validity of such contracts. But they certainly violate no rule of law, nor are they contrary to sound policy."

So, in *Adams* v. *O'Connor*, 100 Mass. 515, it was held by the same court, that, on a sale of goods for cash, no title vests in the purchaser till the price is paid. The court said : "The sale to the defendants having been found by the jury to

have been for cash, was a conditional sale, and vested no title in the purchasers until the terms of sale had been complied with." *Tyler* v. *Freeman*, 3 Cush. 261; *Whitney* v. *Eaton*, 15 Gray, 225; *Hirschorn* v. *Canney*, 98 Mass. 149.

The facts found by the court in the case at bar show very clearly, as it seems to us, that the appellee sold his wheat to Hart for cash on delivery, and that, as Hart never complied with the terms of sale, the title to the wheat never passed to him from the appellee.

The court found that the wheat was delivered and weighed at Miller's Station, and put by appellee in a car furnished by Hart on the side-track of appellant's road; that Hart then nailed up the car ready for shipment; that appellee then asked Hart for his money, and Hart replied that he did not have the money with him but it would be up next day; that appellee then told Hart he could not have the wheat until it was paid for; and that Hart assented to this, and said that he was in no hurry for the wheat, and would let it remain there until he obtained the money. We are of the opinion, that, upon the facts found, the court's conclusion of law was right, that there was no waiver by appellee of the condition that he should be paid in cash the agreed price for his wheat before the title thereto should pass to Hart. The court also stated as a conclusion of law, upon the facts found, that the issue of a bill of lading, and the attempted sale of the wheat and assignment of the bill to the appellant Start, did not, in law, preclude the appellee from regaining his property. This conclusion, we think, is clearly right.

In *Saltus* v. *Everett*, 20 Wend. 267, Chancellor WALWORTH said: "The bill of lading is, by the custom of merchants, transferable, so as to vest in the assignee the title to the goods which the assignor had in them; but if a person without authority from me ships my goods and takes a bill of lading in his own name, he can not, by assigning that bill of lading to another, divest my title to the property." In the same case

The Evansville and Terre Haute Railroad Company *et al. v.* Erwin.

it was also said: "The universal and fundamental principle of our law of personal property, is, that no man can be divested of his property without his own consent; and, consequently, that even the honest purchaser under a defective title can not hold against the true proprietor. · That ' no one can transfer to another a better title than he has himself,' is a maxim, says Chancellor Kent, ' alike of the common and the civil law, and a sale, *ex vi termini,* imports nothing more than that the *bona fide* purchaser succeeds to the rights of the vendor.'" 2 Kent's Com. 324.

In *Barnard* v. *Campbell,* 55 N. Y. 456, the court said: "Bills of lading differ essentially from bills of exchange and other commercial negotiable instruments; and, even possession of a bill of lading, without the authority of the owner and vendor of the goods, or when obtained by fraud, will not authorize a transfer so as to defeat the title of the original owner, or affect his right to rescind the sale and stop the goods in transit. While possession of a bill of lading, or other document of like nature may be evidence of title, and in some circumstances and for some purposes equivalent to actual possession of the goods, it does not constitute title, nor of itself affect the operation of the general rule that property in chattels can not be transferred except by one having the title or an authority from the true owner." See, also, *Gibson* v. *Tobey,* 46 N. Y. 637 (7 Am. R. 397); *Kinsey* v. *Leggett,* 71 N. Y. 387.

In the case now before us, our conclusion is, that upon the facts specially found the trial court did not err in its conclusions of law.

The judgment is affirmed, with costs.