## AMERICAN RAILWAY EXPRESS CO. v. VOELKEL. (No. 401–3748.)

(Commission of Appeals of Texas, Section B. June 13, 1923.)

**1. Assignments ⬦98 — Assignee of seller's claim stands in seller's shoes.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 584, where seller's claim against one to whom express company delivered a C. O. D. shipment without collecting the price was assigned to the express company, the express company stood in the place of the seller and in its action against the one receiving the shipment was in the same position as if the seller itself were suing.

**2. Sales ⬦300—Seller has lien on goods shipped C. O. D. until price is paid.**

Where seller shipped goods C. O. D., it had a lien for the purchase price until the price was paid.

**3. Sales ⬦232—One taking goods shipped C. O. D. without satisfying seller's lien is guilty of conversion.**

Where goods are shipped by seller C. O. D., one receiving or taking goods from the carrier without satisfying the seller's lien for the purchase price is guilty of conversion.

**4. Sales ⬦318, 340—Seller's rights on conversion of goods on which it has a lien, stated; right to reclaim lost if not promptly asserted.**

Where goods shipped C. O. D. by seller were taken without satisfying the seller's lien for the price, the seller could have either repossessed the property or waived that right and sued for its value; but the right to reclaim, if not promptly exercised, was waived.

---

**5. Sales ⬤⇒235(2)—Express company's delivery of C. O. D. shipment without collecting price held not to bind shipper.**

Where goods were shipped by express C. O. D. by seller, the express company's unauthorized delivery of the goods without collecting the price did not bind the seller, the person receiving the goods being charged with notice of what the shipment papers showed.

**6. Sales ⬤⇒239—Credit of price upon uncollectable account does not make buyer bona fide purchaser.**

The crediting of the price of an article upon an uncollectable account does not entitle the buyer to the rights of one paying value.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Action by the American Railway Express Company against L. C. Voelkel. Judgment for defendant was affirmed by the Court of Civil Appeals (236 S. W. 555), and plaintiff brings error. Judgments of the Court of Civil Appeals and District Court reversed and rendered.

Baker, Botts, Parker & Garwood, of Houston, and Head, Dillard, Smith, Maxey & Head, and Jesse F. Holt, all of Sherman, for plaintiff in error. H. L. Davis, of McKinney, for defendant in error.

POWELL, J. In June, 1919, one Thomas Gavin contracted to buy from the Continental Supply Company, through its Houston office, one complete oil-drilling outfit, to be delivered at Burkburnett, Tex., by August 15, 1919, upon terms of one-third cash, balance on time, to be evidenced by notes. Gavin furnished the supply company with lists covering size, weight, and amount of machinery he would need, requesting that he be notified when shipment was ready. On August 20, 1919, the company wired him that the machinery was ready for shipment, to which Gavin replied by wire that he would in a couple of days go to Houston with a practical man and check the material. On August 25, 1919, the supply company received a telegram from Gavin saying in part:

"Ship rotary belonging to new outfit by express to-day, sure, to Burkburnett. Will be down to receive balance of the rig in a day or so."

In response to the message just quoted, the supply company immediately shipped out the rotary and its fittings by express, consigned to Thomas Gavin, receiving from the American Railway Express Company a nonnegotiable receipt, showing the shipment was consigned to Gavin C. O. D., $1,080. The next day, August 26, 1919, the company wired Gavin that the shipment was made the night before, and that it had guaranteed that he (Gavin) would have men there to unload it, otherwise express company would not have

accepted the shipment. The telegram was confirmed by letter, but the telegram and letter were silent as to whether or not the shipment was open or C. O. D.

In July, 1919, Voelkel, defendant in error, was engaged in drilling oil wells in the Burkburnett field in Wichita county, Tex. He drilled some wells on his own account, and in other similar enterprises he was associated with Dennis. He and Dennis were, about July 15, 1919, drilling a well for the Katy Oil Company, of which Gavin was a director and manager; at the same time, Voelkel, alone, was drilling another well close by for the Diamond D. Oil Company. The rotary he was using in drilling this last-mentioned well broke down. Upon learning that Gavin had contracted, on behalf of the Katy Oil Company, for the rig heretofore mentioned, he applied to Gavin to purchase the rotary portion of said rig. Gavin agreed to make the sale at the same price it cost him. It was to consummate this sale to Voelkel that Gavin sent the telegram to the supply company on August 25, 1919, already set out, and which resulted in the immediate shipment of the rotary. The balance of the order was never filled, seeming to have been abandoned by mutual agreement.

Voelkel went to the station and signed Gavin's name to the express company's "delivery sheet," as he was authorized to do by Gavin, and received the machinery on August 27, 1919. Through some error or oversight, the agents and employees of the express company did not demand the $1,080 C. O. D., and Voelkel got possession of the machinery without paying therefor, although the papers called for such payment. Voelkel testified that he did not know the shipment had been made C. O. D.; that he supposed Gavin would satisfy the supply company; that he did not know anything to the contrary until about seven months later when an agent of the express company came around investigating the matter.

About September 1, 1919, Voelkel finished drilling the well for the Katy Oil Company; the latter concern then owed him some $5,000 for that work; about October 1, 1919, he gave the Katy Oil Company credit on account for the $1,080 which Gavin had advised him was the value of the machinery. The evidence further shows that Voelkel never did collect all of his debt from the Katy Oil Company, although he made an effort to do so. Gavin and the Katy Oil Company, however, made no objection, it seems, to taking credit with Voelkel for the value of this machinery, for which they had never paid the supply company one cent.

On November 8, 1919, the supply company filed its claim against the express company for this sum of $1,080. On March 16, 1920, the express company paid the supply company $1,080 in full of said claim. On June

30, 1920, it took an assignment from the supply company which conveyed to the former all the right, claim, and account whatsoever which it had or might have against Thomas Gavin, L. C. Voelkel, or any person, or persons, growing out of the sale and shipment aforesaid.

On August 19, 1920, the express company, in its own right and as such assignee, filed suit aginst Voelkel. The nature of the pleadings of the parties has been admirably stated, by counsel for the express company, as follows:

"Plaintiff in error sued the defendant in error in the district court of Collin county to recover the sum of $1,080 with legal interest thereon, in which two theories in the alternative were relied upon for recovery: First, that the defendant in error was liable as an undisclosed principal in the purchase hereinafter more fully stated; and, second, in the alternative, he was liable for the value of said machinery, which was alleged to be $1,080, on the theory of an unlawful conversion of the same. Defendant in error denied that he had bought said machinery from the supply company, but claimed to have bought the same from one Thomas Gavin, who was acting for one Katy Oil Company, and that he thereafter paid the Katy Oil Company for same, and that he did not know that Gavin nor the Oil Company had not paid or made satisfactory arrangement for the same; that he did not know when he receipted for the machinery that it had been shipped C. O. D."

The case was tried before the court without a jury. Judgment was there rendered for Voelkel. No request was made of the trial court to file findings of fact and conclusions of law. None were filed.

Upon appeal to the Court of Civil Appeals, the judgment of the district court was affirmed. See 236 S. W. 555.

Upon proper application therefor by the express company, the Supreme Court granted a writ of error herein, making the notation that it was "not sure of the decision's correctness."

We have already set out the material facts of this case in the most favorable light for Voelkel. In the light of such facts, which after all are largely without dispute, we now approach a consideration of the only assignment of error carried forward in the application. The express company claims that, under the undisputed material evidence, judgment should be rendered in its favor for the amount sued for. Its assignment of error, a proposition in itself, is as follows:

"The undisputed proof showed that said shipment was made C. O. D.—that is, that the purchase price was to be paid before delivery at destination; that the Continental Supply Company, the shipper thereof, had the right of stoppage in transit, which is in the nature of a lien for the purchase price, and the defendant, by taking the same, converted the same to his own use, is liable for the conversion of the same, as well as for the purchase price thereof, and it was error to render judgment in his favor."

Counsel submit two subpropositions under above assignment, as follows:

"(1) That an unauthorized delivery of personal property by an agent does not defeat the rights of the seller.

"(2) That where the seller delivers personal property sold to the carrier under C. O. D. terms by which the carrier is to collect at destination from the consignee the purchase price, the seller has the right of possession of the goods until payment of the purchase price, and that this right of possession is in the nature of a lien on the goods for the purchase price, and that an unauthorized delivery of the goods by the carrier without collection of the purchase price would not defeat this lien or right of the seller in the goods, but the buyer receiving the same would be liable as for conversion for the value of the goods."

It is earnestly urged, in connection with the propositions just above set out, that, where an agent unauthorizedly delivers its principal's goods to a third person, such third person does not obtain complete title thereto, even though his good faith in the transaction is not questioned. In other words, that the express company was not authorized to deliver this machinery to Gavin until $1,080 was paid therefor by him; that Voelkel was no more entitled to possess the machinery without payment of the C. O. D. than was Gavin.

The assignment and propositions of counsel just quoted seem to be supported by the following authorities: Russell v. Oppenheimer, 1 White & W. Civ. Cas. Ct. App. § 269; Sandford v. Wilson, 2 Willson, Civ. Cas. Ct. App. § 248; Shilling v. Shilling (Tex. Civ. App.) 35 S. W. 420; Chandler v. Fulton, 10 Tex. 23, 60 Am. Dec. 188; Kempner v. Thompson, 45 Tex. Civ. App. 267, 100 S. W. 351; Allyn & Co. v. Willis, 65 Tex. 65; Lanman v. McGregor, 94 Ind. 301; Clark v. Whiteus (Okl.) 171 Pac. 746; Lumber Co. v. Land Co., 171 Ala. 77, 54 South. 608; Rew v. Maynes, 147 Iowa, 15, 125 N. W. 804; Shaw v. Bank, 101 U. S. 557, 25 L. Ed. 892; 38 Cyc. 2025, note 36, and 2023, 2024, note 32; 35 Cyc. 349, notes 34 and 35; 26 R. C. L. p. 1118, par. 29, note 11.

[1] In this case, the express company, as assignee of the supply company, stands in the place of the latter and is in exactly the same attitude it would have been if the supply company itself was suing. See article 584, Vernon's Sayles' Revised Civil Statutes of Texas of 1914; Express Company v. Pugh (Tex. Civ. App.) 185 S. W. 61.

[2] Do the courts of Texas recognize a lien in favor of the supply company for the C. O. D. payment of $1,080? We think they do.

In the case of Chandler v. Fulton, 10 Tex. 2, 60 Am. Dec. 188, Judge Wheeler says:

"The property in the goods unquestionably was in Nicholson; and the admission of that

fact by the consignors, or their agents, could not affect the right of stoppage in transitu. That right does not rest upon the ground of a rescission of the contract. Its exercise does not rescind the contract of sale, or divest the title of the vendee. It merely places the consignor in the position in which he was before the transitu began, and enables him to enforce the right of lien, which arises in every vendor, on the nonpayment of the purchase money."

In the later case of Allyn & Co. v. Willis, 65 Tex. 65, Judge Stayton expressly approves the quoted holding in Chandler v. Fulton, supra, and says:

"Whatsoever doubt there may have been in former times as to the effect of stopping goods in transitu, we think it was settled by the great weight of authority, English and American, 'that the true nature and effect of this remedy of the vendor is simply to secure the goods to his possession so as to enable him to exercise his rights as an unpaid vendor, not to rescind the sale.' Benj. on Sales, 867, 868, and citations; Wait's Acts. and Def. 618 and citations."

In the case of Robinson & Martin v. R. R. Co., 105 Tex. 185, 146 S. W. 537, Chief Justice Brown says:

"When the Erie City Iron Works sold the boiler to Robinson and Martin and delivered it to the railroad company at Houston the title vested in the purchasers; neither payment of the price nor actual delivery to the purchaser was necessary to pass the title. Boaz & Co. v. Schneider & Davis, 69 Tex. 128; Cleveland v. Williams, 29 Tex. 204, 94 Am. Dec. 274; Irvin v. Edwards, 92 Tex. 258. The cases in our own reports are so numerous and definite to this proposition that we will not cite other authorities.

"It is true that Robinson & Martin could not have taken possession of the boiler, without consent of the seller, until the price was paid, which right of possession by the Iron Works was asserted and protected by making the delivery conditioned upon payment of the price. The right of property passed to the purchaser when the particular boiler was designated, but the right of possession remained with the seller until the draft was paid."

It will be seen that Judge Brown recognizes the rule that the right of property may be in the purchaser and the right of possession in the seller at the same time and until the latter is paid.

[3] One who takes personal property without satisfying the aforesaid lien of the vendor is guilty of a conversion, according to the following authorities:

In the case of Lanman v. McGregor, 94 Ind. 301, the Supreme Court of Indiana, speaking through Chief Justice Howk, says:

"It is settled law, in this state, that where personal property is sold for cash on delivery, or where, as in the case at bar, by the terms of the contract, the vendor is to hold the property sold until paid for, the vendee acquires no title to the property which he can transfer, until the terms of the sale are complied with.

Evansville, etc., R. R. Co. v. Erwin, 84 Ind. 457, and authorities there cited. Where, in such a case, the vendee of the personal property without the knowledge or consent of the vendor, sells the property to third parties, who convert the same to their own use, they acquire no title to the property as against the original vendor, and are liable to him for its value or, as in this case, for the balance due him from his vendee on the agreed price thereof. Thomas v. Winters, 12 Ind. 322; Dunbar v. Rawles, 28 Ind. 225; Bradshaw v. Warner, 54 Ind. 58."

In Cyc. vol. 38, pp. 2023, 2024, we read:

"One who takes possession of and claims rights in a chattel, through a purchaser or other means, from a person who had no power from the owner so to dispose of it, is guilty of a conversion of the chattel and liable in trover for the value thereof."

Again, in the same volume of Cyc. p. 2025, we note:

"Liability for conversion attaches to whomsoever receives and converts to his own use, or otherwise disposes of, property which is delivered to him by one to whom the property had been intrusted by the owner for another and distinct purpose."

It seems clear from the foregoing authorities that Gavin had no right to possess this property until he had paid the C. O. D. purchase price. This right could not be conferred upon him by the unauthorized act of an express agent. The supply company could have proceeded against Gavin in either of two ways, as we shall hereafter show. Gavin could convey to Voelkel no higher right than he himself had, and he had none until he paid for the machinery, which he has never done. That Voelkel and Gavin, by reason of their negotiations, occupied the same relation to the supply company, so far as liability to suit is concerned, is made clear by the following quotation from the Supreme Court of Alabama in the case of Lumber Co. v. Land Co., 171 Ala. 77, 54 South. 608:

"Although Ferguson may have supposed that his proposition to buy would be accepted, and may have relied on the assurance of the agent (which, however, is denied by said agent) that it would be all right for him to go on taking the timber, yet he was presumed to know the law, that the title to the property was not in him, and, consequently, in taking the timber, after he had proposed to buy it, he was a willful trespasser. The defendant, deriving title from him, occupies the same relation as Ferguson. Craze v. Ala. State Land Co., 155 Ala. 431–435, 46 South. 479."

[4] If the supply company or express company had pursued its remedies promptly, it could have had choice of two methods of procedure. It could have repossessed the property or waived that right and sued for its value. Perhaps the leading case in this connection is by the Supreme Court of Pennsylvania and is that of Frech v. Lewis, 218 Pa. 141, 67 Atl. 45, 11 L. R. A. (N. S.) 948,

120 Am. St. Rep. 864, 11 Ann. Cas. 545. In that case, the court says:

"Possession, however, having passed, and the buyer, by the act of the seller, having been invested with the indicia of ownership, the policy of our law requires that this situation—the possession in one and the right of property in another—shall continue no longer than is necessary to enable the seller to recover the goods with which he has parted. The law gives the seller the right, in such case, to reclaim his goods; but he must do so promptly; otherwise he will be held to have waived his right, and can only thereafter look to the buyer for the price."

The case just quoted from has been generally followed and seems to be sound in principle. There is much reason for requiring prompt action if the property itself is to be repossessed.

Aforesaid remedies are recognized in the Texas case of Reed v. Express Co. (Tex. Civ. App.) 127 S. W. 901. In that case the company sued for possession of the machine in question. The court held that the suit, seeking that remedy, came too late. But Judge Neill went on to say:

"The question of the right of the plaintiff to recover from the defendant the purchase money for the machine, it not having sued therefor, is not involved in this case.

"The judgment of the county court is reversed, and judgment is here rendered in favor of the defendant, without prejudice to the plaintiff's right, if any it has, to sue for and recover the purchase money of the machine in question."

In the case at bar, the express company instituted its suit growing out of this conversion by Voelkel a little less than one year after the taking occurred. There is no prayer for possession of the machinery, but only for the $1,080, which the undisputed evidence shows to have been the value of the outfit at the date of its delivery to Voelkel.

It follows, from what we have said, that we think the trial court should have entered judgment for the express company for the amount sued for. The Indiana case of Lanman v. McGregor, supra, is exactly in point. We think it sound and not in conflict with the Texas authorities.

But, conceding for the purposes of this case, that under certain circumstances one guilty of a conversion of personal property would be entitled to rely upon the defense of being a bona fide purchaser for value, we do not think the defense is available to Voelkel under the facts of the case at bar. We say this for two reasons:

[5] In the first place, Voelkel did not purchase from a party who was even in possession of the machinery. He bought when it was in the possession of the shipper and even before it was in transit. He finally took possession from the hands of the express company, a common carrier, and is charged with notice of the rights of the seller. In this connection, we quote as follows from Cyc. vol. 35, p. 349:

"A purchaser of goods shipped by carrier is also bound to make inquiry as to the bills of lading, and is charged with notice of facts as to the state of the title shown by such documents."

In support of above rule, Cyc. cites the following authorities: Bank v. Railway Co., 44 N. Y. 136; Decan v. Shipper, 35 Pa. 239, 78 Am. Dec. 334; Bank v. Cummings, 89 Tenn. 609, 18 S. W. 115, 24 Am. St. Rep. 618; Shaw v. Bank, 101 U. S. 557, 25 L. Ed. 892.

We have carefully read the authorities just listed, and, to say the least of it, they tend strongly to support the text from Cyc. It is true that these cases do not refer to C. O. D. shipments by express. But such latter shipments are closely analogous to shipments by freight on the railroads and delivery of goods by warehousemen. If one taking goods from a freight office or warehouse is charged with notice of the state of the title thereto, as shown by the papers covering the property so shipped or stored, then there is no good reason why he should not be charged with knowledge of the contents of the receipt, waybill, and delivery sheet employed by an express company in transmitting and delivering shipments.

In the New York case of Bank v. R. R. Co., 44 N. Y. 136, it is held that it is the duty of one receiving property from a warehouseman to inquire for the bill of lading and investigate the state of the title to such property as shown therein. In that case, the court says:

"The defendant is not a bona fide purchaser, nor were the purchasers bona fide purchasers in law. The defendant's duty, as a warehouseman, to deliver only to the party holding the bill of lading was clear, and the duty of the purchaser to inquire for the bill of lading was equally clear."

Along this same line, there is a very able opinion by the Supreme Court of Tennessee in the case of Bank v. Cummings, 89 Tenn. 609, 18 S. W. 115, 24 Am. St. Rep. 618. This opinion was written by the late Justice Lurton, a jurist of national reputation. He said therein:

"A special agent, authorized to deliver a bill of lading only upon payment of the bill of exchange drawn against the goods and attached to the bill of lading, cannot bind his principal by a delivery without such payment. The person thus acquiring a bill indorsed in blank has been held not to acquire any title to the goods as against the principal. Stollenwerck v. Thacher, 115 Mass. 224. And third persons dealing with property thus shipped, though acting in good faith in the regular course of business, and paying value, are chargeable with constructive notice, and acquire no better title than the drawee. Bank v. Logan, 74 N. Y. 568;

Hieskell v. Bank, 89 Pa. St. 155; Dows v. Bank, 91 U. S. 631."

Therefore we conclude that an express company, as special agent for the shipper to deliver goods C. O. D., cannot bind its principal by a delivery without such payment, and that a third person obtaining a delivery without payment is charged with notice of what the shipment papers show.

In the case at bar, there is no proof that Gavin even told Voelkel he had paid for this machinery. Nothing was said between them on this point before the machinery was delivered. When Voelkel took the goods, not from the possession of Gavin, but from a common carrier, he took them subject to whatever rights the shipper had therein. The very "delivery sheet" of the Express Company, signed by Voelkel when the goods were delivered, contained sufficient information to put him upon inquiry as to whether or not a C. O. D. payment was due thereon. If he had called for all the papers, including copy of the nonnegotiable receipt, or what would be called the bill of lading in a freight shipment, issued to the supply company by the express company, he would have seen that the shipper retained a lien for the payment of the purchase money.

Under the facts of this case, and the authorities cited, we are of the view that it was the duty of Voelkel to investigate these shipment papers issued by the express company to ascertain the state of the title to this machinery which he was taking over; that an investigation of that kind would have shown the C. O. D. payment to be due; that he is charged with this knowledge which he could have obtained; that, being so charged with it, he could not later escape liability to pay the supply company for this machinery by giving credit to an oil company on an account it owed him.

[6] Not only was Voelkel not an innocent purchaser for the reason that he was charged with knowledge of the lien and claim of the supply company, as already shown, but for the further reason that he really paid no value. As already stated, he had an uncollectable account against an oil company. We say uncollectable, because he was still unable to collect a balance due thereon when this case was tried, and Gavin had left for parts unknown, but probably to a western state. It is evident that this unpaid balance owing Voelkel by Gavin's concern would have been just $1,080 larger than it was but for a credit given it by Voelkel in the sum of $1,080 representing the value of this machinery.

A careful analysis of the facts of this case shows that a rather dangerous rule would be established should the supply company be denied a recovery herein. It would permit two men, by dealing with each other, to cancel debts among themselves by using and wearing out property of a third party without paying that third party for it, and that, too, when the property had been shipped C. O. D. by such third party, but unauthorizedly delivered as a mere open shipment.

As we understand this record, under the decisions as we construe them, we think there was but one judgment the trial court could properly have entered, and that was one in favor of the express company for the full amount sued for. The uncontradicted evidence showed that the value of the machinery was $1,080.

Therefore we recommend that the judgments of the district court and Court of Civil Appeals be reversed and judgment rendered by the Supreme Court in favor of plaintiff in error and against defendant in error for $1,080, with interest thereon from November 26, 1920, the date of the judgment in the district court, at the rate of 6 per cent. per annum.

We further recommend that all costs in all the courts be taxed against defendant in error.

CURETON, C. J. Judgments of the Court of Civil Appeals and district court both reversed, and judgment rendered for the plaintiff in error.