HODGES et al. v. LEACH et al.

No. 5896.

Court of Civil Appeals of Texas. Amarillo.

Oct. 4, 1948.

838

Klett, Bean, Evans & Justice and B. B. Chappell, all of Lubbock, for appellants.

Campbell & Adams, of Lubbock, for appellees.

STOKES, Justice.

The record in this case reveals that on May 24, 1945, appellee, W. W. Leach, sold to the appellee, D. K. Baucom, one steel combination spudder and rotary drilling rig and as consideration therefor, Baucom executed and delivered to Leach his promissory note for the sum of $2400 due and payable one year after date, bearing interest at the rate of 6% per annum and providing for 10% addition as attorney's fees. To secure the payment of the note Baucom executed and delivered to Leach a chattel mortgage on the combination rig. The description of the property included a large number of parts such as a rotary table, a circulating pump and other items which composed, or were attached to, the combination machine. On November 19, 1946, D. K. Baucom sold the combination drilling machine to C. A. Baucom and Joe Hodges, who, on that day, entered into a partnership agreement. As consideration for the machine, Hodges & Baucom agreed to pay to D. K. Baucom $2210 in cash and assume $2300 of itemized indebtedness which D. K. Baucom owed other parties, including a balance due upon the note held by appellee Leach. Hodges & Baucom obtained possession of the machine without

the knowledge or consent of D. K. Baucom and did not pay to him the cash consideration of $2210. After obtaining possession of the machine, Hodges & Baucom separated it into two drilling machines, one called a spudder and the other a rotary drilling rig, with the intention of using both machines in drilling water wells in the south plains area. Appellant, J. A. Hodges, an uncle of Joe Hodges, furnished money to the partnership from time to time to defray expenses incurred by them and on February 1, 1946, the firm of Hodges & Baucom executed and delivered to appellant, J. A. Hodges, a promissory note in the sum of $6000 payable July 1, 1946, and as security therefor, they executed a chattel mortgage on the two machines into which the combination machine had been converted. The note not being paid, sometime later, the exact date not shown, appellant, J. A. Hodges, took possession of the two drilling machines under the provisions of his chattel mortgage, and has retained possession since that time.

This suit was instituted by the appellee, W. W. Leach, against the appellee, D. K. Baucom, and appellant, J. A. Hodges, for $466.80, alleged to be the balance remaining unpaid on the note, and for foreclosure of the chattel mortgage lien executed by appellee, D. K. Baucom. By amended petition he included Joe Hodges and C. A. Baucom as defendants and alleged the balance due on his note to be $582.45. Appellee, D. K. Baucom, answered by admitting he was indebted to Leach in the amount alleged by him, and the validity of the chattel mortgage sued upon. He then asserted a cross action against Joe Hodges, C. A. Baucom and J. A. Hodges in which he alleged Hodges & Baucom's indebtedness to him of $2210 and that they, together with appellant, J. A. Hodges, had converted the combination rotary drilling rig and spudder to their own use and benefit. He prayed for judgment decreeing to him the title and possession of the machinery upon his paying to them the sum of $1,793.52, the amount which he alleged they had paid upon his outstanding indebtedness of $2300 assumed by Hodges & Baucom as part of the purchase price of the machine and, in the alternative, for

judgment against Joe Hodges and C. A. Baucom for his debt and foreclosure against them and J. A. Hodges of his lien on the machinery.

At the close of the testimony, and upon motion of appellee, W. W. Leach, the court instructed the jury to return a verdict in his favor and, upon the return of the verdict, judgment was entered in favor of Leach for the balance due upon his note and foreclosure of his chattel mortgage lien against all of the other parties to the suit. The controversy between appellee, D. K. Baucom, as cross plaintiff, and Joe Hodges, C. A. Baucom and J. A. Hodges, as cross defendants, was submitted to the jury upon special issues in answer to which the jury found that, on November 19, 1945, D. K. Baucom agreed to sell the combination rotary drilling and spudder machine to Joe Hodges and C. A. Baucom for which they agreed to pay him $2210; that Hodges and Baucom had not paid D. K. Baucom anything for his equity in the machinery; that the title to the machinery was not to pass out of D. K. Baucom until the consideration was paid to him; that D. K. Baucom demanded that he be paid for the machinery before possession would be delivered to the purchasers; that D. K. Baucom had not, within a reasonable time, offered to repay the amounts paid upon his debts by Hodges & Baucom and demanded a return of the machinery; that J. A. Hodges knew D. K. Baucom had not been paid for his interest in the machinery and that he had or claimed an interest in it at, and prior to, the time J. A. Hodges advanced money to, and took his mortgage from, Hodges & Baucom; that he acquired this knowledge on or about November 19, 1945; and that J. A. Hodges also knew D. K. Baucom was the owner of the machinery prior to that date.

The court entered judgment upon the verdict in favor of appellee, D. K. Baucom, against Joe Hodges and C. A. Baucom for $2210 and included therein an order directing Joe Hodges, C. A. Baucom and J. A. Hodges to deliver possession of the machinery to the sheriff to be sold in satisfaction of the judgment against Joe Hodges and C. A. Baucom. The judgment

further provided that, if they failed to deliver possession of all of the items composing the drilling machines, judgment was rendered against all three of them for any deficiency that might remain upon the judgment granted to D. K. Baucom.

Appellants, J. A. Hodges and Joe Hodges, filed motions for new trial which were overruled and they have brought the case to this court for review upon four contentions, supported by proper assignments and points of error, in which they contend, first, the court erred in giving to the jury an instructed verdict in favor of the appellee, W. W. Leach, because the property described in his chattel mortgage was a combination spudder and rotary machine and the evidence showed no such machine was in existence at the time of the trial and also because the evidence showed he had waived his lien on such machine; secondly, the court erred in granting judgment foreclosure a lien in favor of D. K. Baucom because there was no evidence of any lien retained by him or existing in his favor; thirdly, they complain of the form of the judgment because portions of it are indefinite and meaningless and are not supported by the pleadings and, fourthly, that the court erred in rendering judgment against J. A. Hodges for any deficit that might remain upon the judgment if he failed to deliver to the sheriff all of the property composing the drilling machines.

 In our opinion there is no merit in appellants' first contention. There is no question as to the validity of the chattel mortgage executed by D. K. Baucom to appellee Leach on May 24, 1945, when Leach sold the combination rotary machine and spudder to Baucom. The chattel mortgage was filed for registration and appellants had constructive as well as actual knowledge of it when Hodges & Baucom acquired possession of the mortgaged property from D. K. Baucom and also when appellant, J. A. Hodges, acquired his asserted rights in it and lien upon it. The ground upon which appellants base their contention that the combination spudder and rotary machine was not in existence at the time of the trial is that, according to the evidence, the combination

machine had been dismantled and converted into two machines, one a spudder and the other a rotary drilling machine. The evidence is uncontradicted that this change was made by Joe Hodges and C. A. Baucom after they acquired possession of the original machine from D. K. Baucom and that appellant, J. A. Hodges, was fully cognizant of all the facts concerning the change. There was ample evidence to support the conclusion that he assisted in making the change. He knew, therefore, that the items and parts of the machine covered by the chattel mortgage were used in constructing the other two machines and he acquired this knowledge before he invested any money or acquired any right or interest in the property. The mere fact that the one machine had been separated into two machines would not destroy the chattel mortgage lien held by Leach in so far as Joe Hodges and C. A. Baucom were concerned and, since appellant, J. A. Hodges, knew about the change, he is in no better position than they to deny its validity. As between the mortgagee and the mortgagor and those having notice, it matters not how much the mortgaged article might be increased in value or changed in form, the mortgage attaches to any additions as accessions made to the mortgaged article as it was when the mortgage was created. Jones on Chattel Mortgages, 5th Ed., Sec. 148.

 We find nothing in the record to justify the contention of appellants that Leach had waived his chattel mortgage lien. He testified that, when he ascertained the change was being made, he objected to it and told J. A. Hodges, Joe Hodges and C. A. Baucom that he was not satisfied about it and reminded them that his note had not been paid. He said they assured him it would be paid and, in our opinion, this promise justified him in withholding further protest.

 The second contention has reference to the foreclosure of a lien in favor of appellee, D. K. Baucom, appellants contending that no such lien was in existence. Notwithstanding the agreement that the consideration of $2210 would be paid

to D. K. Baucom before the combination machine passed out of his possession, C. A. Baucom took possession of it without the knowledge or consent of D. K. Baucom and he testified he did this on behalf of the firm of Hodges & Baucom. It is well settled that when property is sold and the purchaser obtains possession of it under such circumstances and without payment of the purchase price, the title remains in the seller, although the possession might be in the purchaser, and that this right of possession by the seller creates an equitable lien on the property to secure the purchase price. American Ry. Exp. Co. v. Voelkel, Tex.Com.App., 252 S.W. 486; Williams v. Greer, Tex.Civ.App., 122 S.W.2d 247; Lang v. Rickmers, 70 Tex. 108, 7 S.W. 527. In the case of American Ry. Exp. Co. v. Voelkel, supra, it was held that, where a consignee, or his assignee with notice, obtains possession of machinery shipped under condition that the purchase price be paid upon delivery, without paying the purchase price, the courts recognize a lien in favor of the consignor for the c. o. d. payment. In the Williams case, supra, the purchasers of an automobile sold to them upon condition of a cash payment of the purchase price, obtained possession of the automobile by delivering to the seller a cheque on a bank in another city as part of the purchase price. One of the purchasers stopped payment on the cheque before it was presented to the bank for payment and the Court of Civil Appeals of the Fifth District held that the seller had a lien by implication as between the parties and their privies with notice until the amount represented by the cheque was paid. It was said in effect that after such a transaction resolves itself into a security, whatever may be its form, and whatever name the parties may choose to give it, it is, in equity, a lien. Many cases can be found in which the courts have declared that equity implies a lien as a matter of right and justice to secure any change in possession that arises from the fraudulent acquirement of possession of real or personal property without the payment of the consideration justly due therefor.

Appellants contend there was no evidence of any lien given or retained to secure D. K. Baucom in the purchase price which Hodges & Baucom agreed to pay him for the combination machine. The lien resulting from transactions such as this does not depend upon contract nor evidence of an agreement that a lien shall be retained. It is created by the principals of equity and arises from the acts of the parties. The method through which Hodges & Baucom obtained possession of the machine without payment of the purchase price constituted a legal fraud upon D. K. Baucom's rights and, in our opinion, the case comes well within the legal principals announced in the cases we have cited. The jury found that appellant, J. A. Hodges, knew the machine belonged to D. K. Baucom before it came into the possession of Hodges & Baucom and that they had not paid D. K. Baucom for his equity in it. There is abundant evidence in the record to support these findings and Baucom's lien was therefore as valid against J. A. Hodges' interest as it was against the interests of the purchasers. Any lien he acquired afterwards was subject to Baucom's lien and he had no right to hold possession of the machinery as against Baucom's claim. In our opinion no error was committed by the court in foreclosing D. K. Baucom's lien against J. A. Hodges as well as Joe Hodges and C. A. Baucom and this contention of appellants will be overruled.

The third and fourth contentions will be treated together. They have reference to that portion of the judgment in which Joe Hodges, C. A. Baucom and J. A. Hodges were directed and ordered to deliver to the sheriff each and all of the items composing the original combination machine, and to the action of the court in granting judgment in favor of D. K. Baucom against all of them, including J. A. Hodges, for any deficit that might remain upon his judgment by virtue of any portion of the property not being so delivered. We agree with appellants that these provisions of the judgment are erroneous. Their effect was to grant a judgment

against J. A. Hodges for any deficiency that might remain upon the judgment after the property was sold by the sheriff in the event he failed to deliver to the sheriff all of the machinery sold by D. K. Baucom to Hodges & Baucom. Our courts consistently hold that a mortgagee is entitled to a judgment against one who converts the mortgaged property to the extent of the value of the property converted, if the debt exceeds the value, or to the extent of the debt if it is less than the value. Appellee, D. K. Baucom, did not ask for a judgment against J. A. Hodges as for conversion but prayed only for a foreclosure of the lien as against him and C. A. Baucom and Joe Hodges. The judgment should have followed the provisions of Rule 309, T.R.C.P., formerly Art. 2218, R.C.S., which provides that the judgment shall be that the plaintiff recover his debt with foreclosure on the property subject to his lien. The provision in the decree which ordered the appellants and C. A. Baucom to deliver the property to the sheriff was erroneous and should not have been included in the judgment. Frankel v. Byers, 71 Tex. 308, 9 S.W. 160; A B C Stores, Inc. v. Houston Showcase & Mfg. Co., Tex.Civ.App., 284 S.W. 332; First Nat. Bank of Lewisville v. Davis, Tex. Com.App., 5 S.W.2d 753; Scaling v. First Nat. Bank of Wichita Falls, 39 Tex.Civ. App. 154, 87 S.W. 715.

While error was committed by the court in the respects just discussed, it was not of such a nature as to justify a reversal of the judgment. The pleadings did not warrant any sort of money judgment against J. A. Hodges but, under the pleadings and the evidence, a judgment against him for foreclosure of the lien was proper. The judgment will therefore be reformed so as to eliminate the two offending features, that is, the order directing the appellants to deliver possession of the property to the sheriff and the conditional judgment rendered against J. A. Hodges.

The statement of facts in this case contains more than forty photostats of various instruments that were introduced in evidence. They are not otherwise

copied and many of them contain blank spaces that seem to have been filled in with pen or pencil. The printing in some of them is exceedingly small and appears on a black or brown background. In order to read some of them it has become necessary to use a magnifying glass and, even then, some of the words are not clear and certain. The process of reading such documents imposes severe and unwarranted strain upon the eyes which probably was not realized by counsel and those who prepared the statement of facts. If these were original documents that were introduced in evidence, there is no order of the trial court that they should be sent up in their original form, and no necessity therefor is apparent. We have examined them in this case, as best we could, but the rules and practice do not contemplate the inclusion of such documents in the record and we wish to admonish members of the bar that, hereafter, they will not be considered by this court.

We have carefully examined the assignments of error and considered all of the contentions presented by appellants and, in our opinion, none of them presents reversible error. The judgment of the court below, as reformed, will be affirmed.